GIBNEY v. ALLEN.[1]

1. TRUSTS—TESTAMENTARY TRUSTEE—APPOINTMENT.

When a trustee is named in a will, his appointment as such by the probate court, under Act No. 253, Pub. Acts 1899, is simply declaratory and affirmatory of said will; and the court, except in case of his failure to qualify or other good cause shown, is not authorized to appoint any other person as such.

2. SAME—FAILURE TO FILE BOND—EFFECT — EXECUTORS AND ADMINISTRATORS.

The failure of a trustee under a will to file a bond, as required by an order of the probate court, amounts in law to a disclaimer of such appointment.

3. SAME — DISPOSITION OF TRUST PROPERTY—BONA FIDES AS DEFENSE—WHEN AVAILABLE.

Good faith is a defense only where a trustee, acting within the limits of his powers with proper prudence and diligence, commits mere mistakes or errors of judgment, but is not a defense where he disregards the limits placed upon his power by law or by the instrument creating the trust; and where, on a bill by the beneficiaries under the trust to set aside a deed and mortgage and for an accounting by the trustee, it appeared that the instruments were executed by the trustee without orders from the probate court, his good faith in the transactions, if established, would not be a defense.

4. SAME—ACTS OF TRUSTEE—REPUDIATION—INFANTS — ESTOPPEL.

Where, on such bill, it appeared that complainants were a mother, who was a deaf mute, and two infant children; that the mother, under the evidence, was incompetent to understand and comprehend business transactions; and that she relied implicitly upon the judgment of defendant trustee, held, that under the law he was bound to the strictest accountability to his wards, that the mother was not estopped by her conduct to question the validity of the transactions, and that she, even if a perfectly normal person,

[1]Rehearing denied July 15, 1909.

could not by her conduct deprive complainant infants of their rights, or relieve the trustee of accountability to them.

5. SAME — WILLS — APPOINTMENT OF EXECUTOR AS TRUSTEE — EFFECT.

The appointment by a testator, in a separate clause of the will, of the executor therein named to be a trustee of the estate for certain purposes, does not confer upon the trustee the right to do such acts as are conferred upon him as executor; since the duties of the two offices are distinct, the duties of the executor terminating when those of the trustee begin.

6. SAME—PURCHASE FROM TRUSTEE—BONA FIDES.

Purchasers of trust property from the trustee are put upon inquiry as to the validity of such transactions and cannot rely upon the claim of bona fides.

Appeal from Genesee; Wiest, J., presiding. Submitted October 12, 1908. (Docket No. 41.) Decided April 24, 1909.

Bill by Effie A. Gibney, and Alice Gibney and Lyman Gibney, infants, by next friend, against Thomas J. Allen, trustee, the Union Trust & Savings Bank, Robert W. Selleck, and Lena Selleck to set aside a deed and mortgage and for an accounting. From a decree dismissing the bill except as to an accounting by defendant Allen, complainants appeal. Reversed, and decree entered for complainants.

*Homer J. McBride* and *John H. Farley*, for complainants.

*Brennan & Cook*, for defendant Union Trust & Savings Bank.

*William V. Smith*, for defendants Selleck.

McALVAY, J. The complainant Effie A. Gibney is a deaf mute. The other complainants are her infant children. In 1895, upon the death of her father, Lyman J. Hitchcock, she took, under his will, the use during her

life of 135 acres of land in sections 31 and 32 of Genesee township, Genesee county, with remainder over to her mother. This complainant was an only child. Other estate was left by this will to her mother. Her mother died in 1900, devising all of her estate to defendant Thomas J. Allen in trust, to manage said property and to pay over all income therefrom semi-annually to the daughter during her lifetime, and, upon the daughter's death, the estate was devised to her children, share and share alike, with a provision that Allen should continue during the minority of the children or any of them to care for said estate, and apply the income to their support and education. Allen was also named as executor of the will. He was duly appointed executor, administered the estate, and closed it in 1901. On July 19, 1901, he was appointed trustee under the will by order of the probate court, and it was further ordered that, upon giving a good and sufficient bond in the sum of $12,000, letters of trusteeship should issue to him. He never gave the required bond. On July 26th he filed with the probate register a bond in the sum of $5,000. It was never approved by the court. The probate register fixed up letters of trusteeship on a signed testamentary blank by striking out some words, and delivered them to Allen. Under this order of assignment to the trustee of the residue of the estate of Matilda P. Hitchcock, Mr. Allen received cash $4,574.81; other personal property, $1,700; house and lot No. 409 Second street East, appraised at $1,500; 48.80 acres of land, section 29, township 8 N., of range 7 E., appraised at $2,500; 78 acres of land in section 32, same town, appraised at $3,000; also 55 acres of land in section 21, same town, appraised at $2,000; also 18½ acres in section 11, same town, appraised at $200, making a total of real and personal estate of $15,474.81 received by Mr. Allen. To this should be added the sum of $500 which was collected by him from notes and accounts considered worthless and not inventoried. Mrs. Gibney and her family, which consisted of herself, her husband, also

a deaf mute, and the two minor children, at the time defendant Allen took possession of the trust estate, lived on the farm of 135 acres of which she had the use under her father's will.

This defendant at once proceeded to manage and dispose of the trust estate as follows: He rebuilt the house on lot at No. 409 Second street at a cost of $3,554.23. He sold all the farm lands, except the 78 acres on section 32. He bought 42 acres immediately adjoining the 78 acres. He bought a lot in Oak Park subdivision on Harriet street, in Flint, and built a house on it costing $2,000. The trust estate did not include any right or interest in Mrs. Gibney's estate in 135 acres she received under her father's will. In October, 1902, she gave defendant Allen a power of attorney to take charge of this farm, to receive the proceeds therefrom, make necessary improvements from such proceeds, pay outstanding debts, and turn any balance over to her. He proceeded to make improvements on this farm consisting of new barns, fences, and drains, amounting to $4,500, from moneys belonging to the trust estate. During these transactions defendant Allen borrowed from defendant Union Trust & Savings Bank money in the following amounts: September 12, 1905, $1,000; November 9, 1905, $650; April 7, 1906, $1,800; July 23, 1906, $750; February 11, 1907, $2,000, to secure the payment of which he gave his notes and mortgages as trustee upon the trust property. On April 22, 1907, by land contract, he sold what is known as the "Second street property," in the city of Flint, belonging to the trust, to defendant Robert W. Selleck for a consideration of $4,800, payable in monthly payments of $100, without interest on deferred payments. During this time, when defendant Allen was in this manner engaged in these transactions with the property of this trust estate, the record shows that he made and filed in the probate court of Genesee county three accounts, as follows: March 20, 1903; January 27, 1905; and August 1, 1905. It will not be necessary to state these accounts in this opinion. Reference, if neces-

sary, will be made to certain portions of them later.  These
accounts were never allowed by the probate court.  On
May 25, 1907, defendant Allen, as trustee, sold and con-
veyed to defendant Union Trust & Savings Bank the Sec-
ond street property, subject to the Selleck contract, and
the Harriet street property, in the city of Flint, in consid-
eration of $6,730.86.  The Harriet street property in the
city of Flint was turned in at $2,500 and the Second street
property at $4,330.86.  The mortgage loans and interest
deducted from the whole consideration left $426.29, for
which the bank gave a check to defendant Allen.  All of
these improvements, sales, loans, mortgages, deeds, and
land contracts were taken out of the body of the trust
estate without any petition to or order, license, or decree
by the probate court of Genesee county or any other court.

On or before June 1, 1907, complainant Effie A. Gibney,
having learned of the things defendant Allen had done in
his dealings with this trust property sufficient to satisfy
her that they were improper, filed a petition in said pro-
bate court for an accounting and his removal.  While
this proceeding was pending, this suit was instituted.  The
bill of complaint in this case was filed July 12, 1907, set-
ting forth the foregoing acts of defendant Allen, claiming
the same to have been done without authority, alleging
that complainants are entitled to an accounting with said
defendant Allen for all property received by him, and also
making the bank and Robert W. Selleck and Lena Sel-
leck, his wife, parties defendant, and praying that all be
required to account for all rents, profits, and income since
said conveyances and contract, that the deed of May 25,
1907, be set aside and declared void, that the mortgage of
February 11, 1907, for $2,000, given by defendant Allen
to the bank, be set aside, and also the land contract given
by him to Robert W. Selleck be set aside and declared
void, and also for general relief.  The defendants have
filed separate answers practically admitting all of the
transactions as herein stated; defendant Allen claiming

he acted under lawful authority as trustee, and the other defendants admitting that they knew the authority under which he was acting, and that he acted within such authority. Defendant bank further claims that the conveyances as to it should not be set aside because of the fact that money it furnished was used for the benefit of the estate. A hearing was had before the circuit court for Genesee county, and a decree was entered denying the relief prayed, asking for the cancellation of the deeds, mortgages, and land contract made by defendant Allen, and further decreed that the bill of complaint, except as to an accounting with defendant Allen, be dismissed. From this decree complainants have appealed, and ask that the decree of the lower court be reversed and they be granted the relief prayed.

In considering this matter, it will be necessary to determine the status of defendant Allen relative to the estate of which he has claimed to be trustee. The source of his appointment originally was the will of Matilda P. Hitchcock. Under this will he was appointed executor. As such he administered the estate, rendered his final account, showing a residue in his hands, and, on his petition as such executor for the assignment of said residue to himself as trustee, it was ordered by the probate court that said residue be assigned to said Thomas J. Allen in trust for Effie A. Gibney during her lifetime and her children surviving her, naming them, and the issue of any deceased child, he having been on petition appointed trustee by order of said court, and it was further ordered that, "upon his giving a good and sufficient bond in the sum of $12,000, letters of trusteeship do issue to him."

By the second paragraph of the will of Matilda P. Hitchcock her estate was devised to defendant Allen as trustee, for certain specific purposes:

"(*a*) To manage said property, and to pay over the interest, rents, issues and profits thereof semi-annually to my daughter, Effie A. Gibney, during her natural life. (*b*) In case my said daughter should die leaving minor chil-

dren, then it is my will that the trust above mentioned shall continue so far as it may relate to the share of such minor children, and that during the minority of such minor children, the said Thomas J. Allen expend the rents, issues and profits and interest of the shares of said property belonging to such minor children, for their education, care and maintenance, or such part thereof as in his judgment may be proper." .

The will, upon the death of the daughter, devised and bequeathed the estate to the daughter's children, share and share alike, subject to the provisions of subdivision "*b*" above quoted. A trustee having been appointed by the testatrix, the probate court, except in case of failure to qualify or other good cause, would have no authority to name any other person as such trustee, and its action in that regard would be declaratory and affirmatory. That the probate court so regarded it, is apparent from the petition and order made; both being founded upon the appointment made by the will of the testatrix. These proceedings relative to the testamentary trustee ( except, perhaps, the appointment ) were required by an act of the legislature entitled :

"An act to establish and confirm the jurisdiction of probate courts over testamentary trusts and trustees, and to provide for the administration and control of such trusts in said courts." Act No. 253, Pub. Acts 1899.

The provisions of this statute have a bearing upon the status of defendant Allen in relation to this trust property. Section 3 provides :

" Every testamentary trustee, before he enters upon his duties as trustee, shall, except when it is otherwise specially provided by law, give bond, with sufficient sureties, in such sum as the probate court for the county in which the will is proved or allowed may order, payable to the judge of said court and his successors, with conditions substantially as follows," etc.

Section 4 :

" When such bond shall be approved by the judge of probate and filed in his office, letters of trusteeship shall

be granted by the judge of probate to the trustee as evidence of his authority to act as such."

Section 10:

" Every trustee who neglects to give a bond in accordance with the preceding sections, within thirty days after the probate court shall fix the penal sum of said bond, shall be considered to have declined or resigned the trust."

From the records of the proceedings had in probate court, which for the purposes of this case are the only competent evidence, we find that defendant Allen did not comply with the provisions of this statute. It appears from the record that by petition he as executor asked that the residue of Mrs. Hitchcock's estate be assigned to himself as trustee; that the petition signed by Mrs. Gibney for his appointment as trustee was in his handwriting; that he knew the order was made appointing him; and that he claimed that he received the trust estate by virtue of said appointment. He was county clerk at this time and an attorney. In the absence of actual knowledge, which it appears he had, he would be charged with knowledge of the orders made by the probate court in these proceedings to which he was an active party. Not having complied with the law in furnishing the bond in the penal sum fixed by the court within 30 days thereafter, he must be considered to have declined or resigned the trust. The failure to file a bond as required amounts to a disclaimer. 28 Am. & Eng. Enc. Law (2d Ed.), p. 973, citing *Daggett* v. *White*, 128 Mass. 398; *Williams* v. *Cushing*, 34 Me. 370; *Deering* v. *Adams*, 37 Me. 265; *Sawyer's Appeal*, 16 N. H. 459. He therefore never became in law the trustee entitled to administer said trust estate. 1 Perry on Trusts (5th Ed.), § 262. The fact that he proceeded to act as a trustee, claiming to be lawfully authorized to do so, did not change his legal status, and make him a trustee in law. As executor, defendant Allen had rendered his final account, which was allowed, and he had been credited with the amount as executor which was to

be charged to him as trustee, and was then discharged as executor. Therefore, whatever he did with the affairs of this estate after such discharge must have been done in some capacity other than as executor, and the claim cannot be made that acts performed by him claiming to be trustee were lawful because the same class of acts were authorized by the will to be performed by him as executor.

It is claimed that defendant Allen acted in good faith in taking upon himself the office of a trustee, and doing the things he is charged with, and acted under color of right. We do not think that the facts in the case warrant this assumption. His knowledge of court proceedings, and of the law and the orders made by the probate court, imposes upon him the necessity in this case, where the relations are those of a trustee to the cestuis que trustent, to satisfy the court by proof cogent and convincing of the fact that he acted in good faith. There is strong evidence to the contrary in the fact that he ignored the order of the court relative to the bond required, and filed a bond of less than half the penal sum which was never approved; also, by his conduct and management of the trust estate in absolute disregard of all the requirements of law. He mortgaged the real estate held in trust without order or license from the probate court. He sold lands and personal property (bank stock) held in trust without authority or license. He bought lands without authority. He borrowed money in large amounts to build houses on the lands of the estate. He borrowed money in large amounts to build a house, barns, fences, and so forth, upon land not belonging to the trust estate. All such acts and doings are admitted by these defendants, who each had knowledge of the authority on which he claimed to rely with respect to the transactions with which each was connected. As bearing upon his good faith, his testimony relative to the sale to defendant bank on May 25, 1907, is significant. He testifies:

"The way I came to give the deed was this. When I reached Flint on Saturday noon, May 25th last, I heard

for the first time that there was something the matter with the Hitchcock estate, so, as soon as I heard there was some question about the transaction with the Union Trust, I went down to the bank, I presume, inside of half an hour from the time I reached town. I found Mr. Davison, and asked him what was the matter, and about his words in reply, ' Let's go up.' I found Mr. Davison there, and he and I went up to Mr. Cook's office without any conversation whatever. At Mr. Cook's office the matter of the loans on the mortgage was discussed. I became satisfied from the discussion that there might be a question of the legality of the mortgages possibly. I became satisfied of that. When I became satisfied that there might be possibly a question, I asked Mr. Cook and Mr. Davison what their proposition was—what they wished to do or to have done. After some conversation in regard to the matter, they asked me if I wished to sell, or would sell, the Second street house and the Harriet street house. * * * The outcome of the conversation was that we decided they would buy the Second street house for the present worth of the contract with Mr. Sellick, and buy the Harriet street house for $2,500, and, as a result of the agreement, this deed was drawn up and executed by me."

This deed was made to satisfy mortgages which were correctly held by the circuit court to have been given to the bank "wholly without authority." And, further, none of his accounts in this record made by him to the probate court show these loans and mortgages to defendant bank, and in one of these accounts he credited himself with 135 acres of land not belonging to the trust estate.

The statute above referred to requires a license from the court to authorize the sale of lands or personal estate, also to authorize the mortgaging or pledging of real or personal estate, to build, alter, complete or repair buildings on such estate, or for any other lawful purpose. For the money used and borrowed to build upon and improve outside property no excuse is advanced except good faith. The question of good or bad faith on the part of defendant Allen was made the crucial question in the case in the court below, and complainants were denied relief because it was found by the court that defendant Allen

acted in good faith. We disagree with that conclusion of fact. The determination of this case, however, does not depend on the good faith of defendant Allen. Good faith is a defense only where a trustee, acting within the limits of his powers with proper prudence and diligence, commits mere mistakes or errors of judgment, but is not a defense where a trustee disregards the limits placed upon his power by law or by the trust instrument. 28 Am. & Eng. Enc. Law (2d Ed.), p. 1063, and cases cited. That this defendant disregarded the limitations of the powers imposed by law and the trust instrument is not disputed. The cestuis que trustent in this case were complainant Mrs. Gibney and her infant children, at that time of tender years. To all of them defendant Allen, claiming to be trustee of this estate, owed the highest duty to safeguard their interests. These children could not consent to or acquiesce in any act of Allen which was irregular, harmful, or unlawful, and the court cannot do it for them. They are the especial wards of courts in chancery, protected in all respects, and those acting as trustees for them are held to the strictest accountability. This is fundamental. The mother could communicate only by signs. She testified through an interpreter, and it is apparent that she is not a person of business ability, and also that she did not understand the transactions of Allen with reference to the body of the estate sufficiently to know whether they were lawful and authorized, and it does not appear that she was informed by him of the exact situation and his rights and duties in the premises. There are several material facts that tend strongly to show her incompetency. Her mother provided a trustee for her income. Mrs. Gibney, because unable to manage the farm of which her father left her the income, gave defendant Allen a power of attorney to act for her. Allen, in explaining why he put her 135 acres into his last account as trustee to show 250 acres in his hands, testified:

"The court is in charge of all people who do not have charge of their own property. I wished them to have an

opportunity to see what I did for Mrs. Gibney. The probate court has general charge of all dependents, I believe."

These facts, together with a reading of her testimony, satisfy us that she did not appreciate and understand these transactions relative to the body of the trust estate, and it is apparent that she relied upon Mr. Allen, and did not question what he did or proposed to do. He was an attorney and her only adviser as far as the record shows. Her conduct has not estopped her from questioning what has been done with the trust estate, as far as her interests therein are concerned, on account of her disability and her want of knowledge of all the facts and circumstances surrounding the transactions, and there is no evidence that she was informed of her legal rights or knew that Allen's conduct was illegal. *White* v. *Sherman*, 168 Ill. 605. There is no authority which holds that any conduct of complainant Mrs. Gibney, even if a perfectly normal person, could operate to deprive these infants of their interests in this estate, or relieve defendant Allen from strict accountability to them. It is not contended that these infant complainants could consent to any of the acts of defendant Allen charged with reference to their interest in this trust estate. They were non sui juris, and have such an interest in this estate as entitles them to the protection of a court of equity. *Tappan's Ex'r* v. *Ricamio*, 16 N. J. Eq. 89. The duties which defendant Allen owed to complainants and to this estate which he had assumed to administer as a trustee, and the strictness with which he should be held to account for his administration, are too well known to require restatement.

It has been insisted that by the will which appointed him executor he was authorized to make these transfers, and the will in the instruments making the transfers is referred to as giving such authority. The principal parts of that will have already been quoted. The last paragraph reads:

"*Fourth:* I hereby nominate and appoint said Thomas J. Allen executor of this my last will and testament with full power to sell and convey real estate when in his judgment it becomes necessary or proper. In witness whereof I," etc.

This clause is absolutely separate and distinct from the paragraph containing his appointment as trustee, in which the purposes of the trust are specifically set forth, and which contains no power of sale. Defendants admit that this is the material question in the case. That such authority was given to him as executor is not disputed. It is claimed by defendants that this power must be construed as extending to him as trustee, that the testator, having confidence in the executor, also named him as trustee, and it is therefore evident that this power was intended to follow him in that capacity. An eminent text-writer has said:

"If a testator in his will appoint his executor to be a trustee, it is as if different persons had been appointed to each office." 1 Perry on Trusts (5th Ed.), § 281.

Therefore, in considering this question, we should bear in mind continually the distinction between the two offices one individual is appointed to fill. Testamentary trustees in this State are now under the jurisdiction and control of probate courts, and the separation of the office of executor from that of such trustee is declared by statute. In attempting to ascertain the intention of the testatrix relative to the power granted to the trustee, we must presume that the will was made with reference to existing laws, as by its terms it appears that it was, thereby creating a trustee within the definition of the statutory "testamentary trustee." Act No. 253, Pub. Acts 1899, makes the provision above stated, as follows:

"SEC. 43. The term 'testamentary trustee' as used in this act includes every person, except an executor, an administrator with the will annexed, or a guardian, who is designated by a will or by any competent authority to execute a trust created by a will; and it includes such an

executor or administrator *where he is acting in the execution of a trust created by the will which is separable from his functions as executor or administrator.*"

The duties of the two offices are distinct. The first terminates when the second begins. Unless from the will itself an intention on the part of the testatrix can be found that sales of real estate were to be made after the administration was closed, we must hold that the power to sell could only be exercised by the executor. There is no indication in the second paragraph of the will, which creates the trust, that such was her intention. The words are:

"To manage said property, and to pay over the interest, rents, issues and profits thereof, semi-annually, to my daughter, during her natural life."

One case has been found where the language of the will was practically the same as that used in the will in this case, and the same persons were made executors and trustees, with power to the executors to sell the real estate. In construing this language the court said:

"The trust herein to 'manage' the property implies, by force of the term used, that the trustees are to retain it under their control, and is inconsistent with the idea that they have authority to sell or otherwise dispose of it. 'To manage an estate is, in common parlance, as well as legal acceptation, no authority to part with the entire interest.' *Roosevelt* v. *Heirs of Fulton*, 7 Cow. (N. Y.) 81. * * *

"Although the persons named in the will as its executors are the same as those to whom the testator directed the property to be distributed in trust for his children, yet the power of sale conferred upon the executors was not given by him to them as trustees, but terminated with their discharge as executors." *Goad* v. *Montgomery*, 119 Cal. 552, affirmed and followed in *Estate of Trescony*, 119 Cal. 568.

We have been able to find no case, and have been referred to none, which does not hold that in the absence of an intention to that effect, expressly or by fair implication

contained in the instrument creating a trust, a power to sell given to an executor cannot be exercised by the same person named as trustee. The same rule is also laid down in cases where the disputes related to the exercise of powers to sell real estate granted by will to executors and trustees, and the question raised was whether others than the persons named might exercise such powers. 2 Perry on Trusts (5th Ed.), § 493 et seq. Defendants have cited several Michigan cases as supporting their contention that the power to sell given the executor must be construed as extending to him as trustee. Of these cases those which have a bearing upon the question under discussion are none of them cases where an executor has also been designated as trustee, but all are where an executor is clothed with powers not administrative, and was to act in respect to the estate not as executor, but as the donee of a power in trust, and also where the instruments creating the power have provided for a sale of the estate for carrying out the purposes named therein. Such executors belong to and are of the class exempted from the provisions of Act No. 253, Pub. Acts 1899, by the terms of section 43, quoted above. *Calkins* v. *Smith*, 41 Mich. 409; *Tracy* v. *Murray*, 49 Mich. 35; *Green* v. *Russell*, 103 Mich. 638. These cases are not opposed to the rule we have discussed, but are founded upon it, and turn upon the authority to sell clearly expressed in the trust instrument. Our conclusion is that a trustee under this will was not authorized to sell the real estate.

Without reference to the question of being in law a trustee or whether a power of sale was given the trustee, the majority of the acts with which defendant Allen is charged were done without any claim or color of right. The circuit court so held in his opinion. He had no color of right to borrow money without authority of court, nor to give mortgages, or erect large improvements on lands not in the trust with borrowed and trust funds, and, even if he had authority to sell, he could make only such sales as in the due administration of this estate were necessary or

proper. Defendants bank and Selleck are not before the court as bona fide purchasers for value without notice. In the transaction with defendant bank it was a matter of loaning money to Allen on notes, and taking mortgages to secure the notes. The consideration of $6,730.86 for the deed made to it May 25, 1907, of the property in Flint, was practically the amount of these notes and mortgages. Defendant bank dealt with Allen as trustee of this estate. Its cashier, when the first loan was made, questioned in regard to the right of the trustee to mortgage the trust property. He acted for the bank in making all the loans, the mortgages, and the final deed. He always knew the purpose for which money was to be used, and knew that the money went into buildings and improvements, and the real estate upon which the money was expended. He took no mortgage upon the 135 acres which did not belong to the estate, although he knew that $4,500 of the money loaned went into buildings and improvements on that description of land. This large sum is included in the mortgages given on the trust property, and it is sought to enforce it against this trust estate, for the reason that it improved other estate in which these infant complainants are also remaindermen and their mother a life tenant. The statement of such a proposition is its sufficient refutation. The fact that the bank knew that it was dealing with a trustee in relation to trust property was sufficient to put it upon inquiry. *Geyser-Marion Gold Mining Co.* v. *Stark*, 106 Fed. 561, 45 C. C. A. 467 (53 L. R. A. 684); *Smith* v. *Burgess*, 133 Mass. 511; *Jeffray* v. *Towar*, 63 N. J. Eq. 530; *Cohnfield* v. *Tanenbaum*, 176 N. Y. 126–130. Such inquiry would have disclosed that defendant Allen had no authority to borrow money for any purpose or to mortgage or sell the real estate. This transfer was not a bona fide sale. It was an attempt, when it was discovered that the mortgages were worthless, to save the probable loss by a deed, made without any deliberation, or further and adequate consideration. These mortgages were void, the money borrowed created

no claim or charge against the estate. The power cannot be enlarged by construction. *Tuttle* v. *First Nat. Bank of Greenfield,* 187 Mass. 533; *Bloomer* v. *Waldron,* 3 Hill (N. Y.), 364; *Parkhurst* v. *Trumbull,* 130 Mich. 408. See, also, section 17, Act No. 253, Pub. Acts 1899. Much of what has been said in regard to the rights of the bank applies to defendant Selleck. He made the first payment, and has since occupied and had full use of property valued by him at $4,800 without further payment. The terms of the sale being $100 down, the balance in like payments each month without any interest for four years are such as to challenge investigation in the interest of complainants. There is no showing or claim that the remaindermen were informed of this transaction, or could consent to it.

We conclude that complainants are entitled to the relief prayed, and hold that all of the sales, contracts, and mortgages made by defendant Allen of and in relation to this trust property were void and should be set aside; that the moneys received by defendant Allen from the bank are no charge against the trust estate, the farm of 135 acres, or the cestuis que trustent; that whatever claim defendants have or relief they are entitled to must be against defendant Allen personally; that complainants are entitled to an accounting with defendants bank and Selleck and wife for all rents and income from the property taken by them under their claimed conveyances, and that complainant Effie A. Gibney, if she so elects, is entitled to an accounting with defendant Allen under the general prayer in the bill of complaint, and a decree will be entered according to this opinion.

The cause will be remanded for further proceedings. Costs of both courts are awarded complainants.

BLAIR, C. J., and GRANT, HOOKER, and MOORE, JJ. concurred.