MICHIGAN HOME MISSIONARY SOCIETY *v.* CORNING.

1. Tʀᴜꜱᴛꜱ—Wɪʟʟꜱ—Exᴇᴄᴜᴛᴏʀꜱ ᴀɴᴅ Aᴅᴍɪɴɪꜱᴛʀᴀᴛᴏʀꜱ.
   Trustees under a will which bequeaths the sum of $5,000 in trust for the benefit of a missionary society, are entitled to receive cash from the executors of the estate.

2. Sᴀᴍᴇ—Wɪʟʟꜱ—Iɴᴛᴇʀᴘʀᴇᴛᴀᴛɪᴏɴ—Iɴᴠᴇꜱᴛᴍᴇɴᴛꜱ.
   A will which transfers such sum in trust to be kept invested,

and which directs the payment of the income to the beneficiary annually, contemplates a permanent investment.

3. SAME — EXECUTORS AND ADMINISTRATORS — INVESTMENTS — FIDUCIARY RELATIONS.

Where the trustees gave a receipt to themselves as executors under the will for an unsecured note of $5,000, taken in their capacity of executors in renewal of a note that their testatrix had accepted, without security, in her lifetime, and where the last renewal had not expired at the time the executors filed their final account and were discharged, they must be held to have contemplated receiving the note as trustees in satisfaction of the legacy and to stand as they would if they had deliberately chosen to accept from a solvent estate a personal note, instead of money.

4. SAME—DISCRETION—CONSTRUCTION OF WILL.

By directing in her will that the trustees use their best skill and discretion in investing the trust fund, the testatrix did not enlarge their powers or discretion; strictly construed, the direction imposed a duty to exercise more than ordinary care.

5. SAME—TRUSTEE'S DUTY—GOOD FAITH.

A trustee must show the utmost good faith in his management of the trust.

6. SAME—DILIGENCE—NEGLIGENCE.

And he must exercise the degree of care and diligence which a man of ordinary prudence would exercise in the management of his own affairs.

7. SAME—INVESTMENTS—SECURITY REQUIRED—BILLS AND NOTES.

It is not such prudence to invest the funds in unsecured notes of an individual or partnership.

8. SAME—RES JUDICATA — PROBATE COURTS — ORDERS — CLOSING ESTATES—EXECUTORS AND ADMINISTRATORS.

By entering an order closing the estate of the testatrix and assigning to the trustees, with their consent, an unsecured note obtained by renewing a loan made by deceased, the probate court did not construe the will, or approve the investment of the executors.

9. EXECUTORS AND ADMINISTRATORS—ESTATES OF DECEDENTS.

Proceedings to administer an estate are *in rem.*

10. SAME—PROBATE COURT—LEGACIES—POWER OF COURT.

A probate court has no power to make an order requiring a legatee of money to accept anything but money in satisfaction of the legacy.

11. SAME—STATUTES—JURISDICTION.
> Jurisdiction to allow the final account of executors and close an estate, is not derived from Act No. 253, Pub. Acts 1899.

12. SAME.
> And since the court had no authority to require the acceptance of a note instead of cash, the order approving the transfer of notes to the trustees must rest on their consent.

13. TRUSTS—ACQUIESCENCE OF BENEFICIARY IN ACTS OF TRUSTEE—BURDEN OF PROOF.
> The burden rests upon a trustee to prove acquiescence of the beneficiary in their acceptance of unsecured notes as an investment.

14. SAME.
> And evidence that accounts were filed with the probate court but not heard or allowed, and that interest on the investment was paid to an unauthorized person, does not show acquiescence, with knowledge of the beneficiary.

Appeal from Saginaw; Gage, J. Submitted October 14, 1910. (Docket No. 70.) Decided February 1, 1911.

Bill by the Michigan Home Missionary Society against Lucy W. Corning and Ida C. Oxtoby, executors of the estate of Gurdon Corning, deceased, and Alexander M. Lemke, for an accounting. From a decree for complainant, defendants appeal. Affirmed.

*Clark C. Wood* ( *Durand & Holland*, of counsel), for complainant.

*Davitt & Davitt*, for defendant Lemke.

*Eugene Wilber*, for defendants Corning and Oxtoby.

The last will and testament of Louise C. Bartlett, who died October 26, 1903, was duly probated November 30, 1903. In her said will, the testatrix nominated and appointed Gurdon Corning and Alexander M. Lemke executors, and also appointed them trustees to receive the trusts, devises, and bequests made in the will, and to carry out the trusts and provisions thereof. These gentlemen assumed the duties of executors and, later, those of trustees. Their final account as executors was allowed. Gur-

don Corning is dead, and Lucy W. Corning and Ida C. Oxtoby are the executors of his estate.

The second provision of the will of Mrs. Bartlett is as follows:

"I give, devise and bequeath to my executors, who are also made trustees under this will, the sum of five thousand dollars in trust, to be kept invested by them according to their best judgment and discretion, and the income and proceeds of such investment, I direct shall be paid by them annually to the Home Missionary Society of the State of Michigan, being the society of that name and description which is connected with the First Congregational Church Society of Saginaw, Michigan."

There were other bequests in the nature of charitable bequests. In her lifetime, on or about April 26, 1901, Mrs. Bartlett loaned to Ross Bros., a partnership engaged in mercantile and lumbering business in and around Beaverton, in Michigan, $10,000, receiving their promissory note for that amount, due nine months after date. This note was renewed January 29, 1902, November 3, 1902, May 6, 1903, and on September 6, 1903, two notes were given in renewal, each for $5,000, due, respectively, four and six months after date. The inventory of the estate was filed April 25, 1904, and in it appeared two notes for $5,000 each, executed by Ross Bros., made payable, as previous notes in the series had been, to defendant Lemke's order, dated, respectively, September 6, 1903, and January 4, 1904, each bearing interest at the rate of 6 per cent. per annum. These notes were renewed by the executors when they became due. In the final account of the executors, they represented to the probate court as follows:

"They also represent that the trust bequests provided for in the second, third, ninth and tenth paragraphs of the will have been provided for by the transfer by your petitioners, as executors, to the trustees named in said will of the notes described in the receipt given by said trustees, which is attached hereto and made a part of this report."

The receipt referred to read as follows:

"(1) Received from the estate of Louise C. Bartlett, by Gurdon Corning and Alexander M. Lemke, executors of said estate, one promissory note for $5,000.00 made and executed by Ross Brothers, of Beaverton, Gladwin County, Mich., September 9, 1904, payable to the order of A. M. Lemke, six months after date, with interest, which note is hereby accepted in satisfaction of the legacy bequeathed by the will of the said Louise C. Bartlett to us in trust to be invested, and the income thereof annually paid to the Home Missionary Society mentioned in the second clause of said will.

"(2) Received from said estate by said executors, note for $5,000.00 made and executed by said Ross Brothers, July 14, 1904, payable to the order of A. M. Lemke, six months after date, with interest, which note is accepted by us in satisfaction of the legacy bequeathed to us in trust by said will, to be invested by us and the income thereof paid to the Foreign Missionary Society mentioned in the third clause of said will.

"(3) Received from said estate by said executors, the note of A. F. Bartlett & Co., for $10,000.00, dated September 9, 1904, payable two years after date, with interest at 5 per cent. per annum, payable annually, which note is accepted by us in full satisfaction of the bequest made to us in trust, the income of which is to be applied to keeping the family vault of said testatrix in repair, and otherwise to be expended in Brady Hill Cemetery, of Saginaw, Mich., as mentioned in the 10th clause of said will.

"(4) Received from said estate by said executors, note for $5,000.00 made and executed by Alexander M. Lemke, on the 9th day of September, A. D. 1904, payable two years after date, with interest at 5 per cent. per annum, payable annually, which note is accepted by us in full payment and satisfaction of the bequest made to us in said will in trust, to establish and maintain a kindergarten school in Saginaw, Mich., as mentioned in the 9th clause of said will.

"Dated January 27, 1905.
"Alexander M. Lemke,
"Gurdon Corning,
"Trustees under Will of Louise C. Bartlett."

This is referred to in the order of the probate court, allowing their final account, as follows:

"*Third*. The provisions made for the other trust bequests, as set out in the receipt of the trustees attached to said petition, is hereby approved and confirmed. And said trustees shall, out of the first income collected on the notes mentioned in said receipt, pay to Gurdon Corning the money advanced by him as inheritance tax thereon and attorney's fees as above mentioned."

In the same order the estate was assigned, some of it to defendant Lemke, some of it to the trustees, the residue to Gurdon Corning, who was the residuary legatee named in the will, and the trustees were ordered to file bonds, each in the penal sum of $15,000, with sureties to be approved by the court. The trustees did not collect the Ross Bros. notes, but continued to renew them from time to time, collecting the interest. The trustees, or Mr. Corning for them, filed three accounts in probate court. None of them was allowed, no notice of hearing was ever published, and no hearing ever had. Neither of the notes were secured, nor was any security thereafter taken by the trustees. Ross Bros. failed in business in November, 1907, and were adjudicated bankrupts; their condition, according to the report of the trustee in bankruptcy, was, and for a considerable period had been, hopelessly insolvent, the liabilities being more than $200,000, and the discovered assets about $60,000. They had for some years been large borrowers of money, their bills payable amounting, between the date of Mrs. Bartlett's death and the time they failed in business, to sums varying from $100,-000 to $150,000. Their own estimate of their assets, made from time to time during this period, showed a surplus of assets over liabilities of from $100,000 to $150,000.

The Michigan Home Missionary Society filed the bill in this cause. It is alleged therein that there are now no funds remaining in the estate of Mrs. Bartlett available to supply the trust fund created in favor of the complainant by her will, and it is prayed that the trustees account for said trust fund whether it is in existence in their hands or whether it has been lost by them. The defendants filed

separate answers, which were replied to, the cause came on for hearing in open court, and a decree was entered requiring the defendant Lemke and the executors of the estate of Gurdon Corning to pay over to James B. Peter and the Detroit Trust Company, who have been respectively appointed to succeed Corning and Lemke as trustees, the trust fund referred to in the said third clause of the will, being $5,000, with interest at 5 per cent. from July 16, 1907. From this decree, defendants have appealed.

The propositions, the affirmative of which complainant maintains, are:

(1) The trustees had not the right to accept the notes in payment of the legacies. This involves (*a*) the right of trustees to invest trust funds in such manner, (*b*) the effect of the provision of the will reading "to be kept invested by them according to their best judgment and discretion," (*c*) the force and effect of the order of the probate court.

(2) The personal interest of the trustees was served by accepting and continuing the notes in force.

(3) The complainant did not acquiesce in the said action of the trustees, and is not concluded by the filing of accounts in probate court.

OSTRANDER, C. J. (*after stating the facts*). 1. The trustees and the beneficiary were entitled to receive from decedent's estate $5,000 in cash. The investment of this fund, contemplated by the will, was a permanent investment, the earnings to be paid annually to the complainant. The note in question was what is known as short-time paper. It fell due during the period required for administering the estate. It had run the time the testatrix agreed that it might run. That it was on hand when the executors proposed to close the estate must be attributed to the fact that the trustees, who were also executors, contemplated taking over and receipting for this note, or a renewal of it, in payment of the legacy. They contemplated doing, and they did, an act as trustees which would discharge them as executors. The case for them

stands no better than it would if they had deliberately chosen to accept from a solvent estate a personal note instead of money. *Mattocks* v. *Moulton*, 84 Me. 545 (24 Atl. 1004). Indeed, the case for them may not stand so well as this, because their interest as beneficiaries under the will, their interest as executors, and any other interest in the matter which is disclosed, may be considered in determining whether they did not deliberately assume the peril which attended their choice, and the continuing peril of failure to collect the note. The direction of the testatrix to use "their best skill and discretion" did not enlarge the powers or discretion of the trustees. *Kimball* v. *Reding*, 31 N. H. 352 (64 Am. Dec. 333); *Caspari* v. *Cutcheon*, 110 Mich. 86 (67 N. W. 1093). Strictly, it was a direction to exercise more than ordinary care and prudence.

It is general doctrine, accepted everywhere, that a trustee must show the utmost good faith. He must exercise in the execution of the trust the degree of care and diligence which a man of ordinary prudence would exercise in the management of his own affairs. In respect to the investment of trust funds, in the absence of express directions from the settlor and of statute directions, courts have not infrequently been called upon to determine whether particular investments evidenced the exercise by the trustee of ordinary prudence. However conflicting in some respects the decisions may appear to be, in one respect they are reasonably uniform. It is a generally accepted rule that it is not prudent to invest trust funds in unsecured notes of an individual or of a partnership. We have found no decision which announces a contrary rule where the trust contemplated an investment of a permanent nature. This rule condemns the defendant trustees, and, if applied, obliges them to account to the *cestui que trust* for the fund.

It is said by the trustees that the investment was approved by the settlor, and it ought not to be considered

imprudent to do what she had done. It would be equally cogent argument for the complainant to say that it was not prudent to accept this note, because, as the trustees knew, banks would not accept it without indorsement or other security. This is not the case of changing or refusing to change the character of specific funds given in trust. Nor is it reasonable to say that the settlor had "invested" her money.

It is said in the brief for the Corning executors:

"We repeat again, the trustees did not invest the money in this note. The note was assigned to them by a decree of the probate court. True, it was at the suggestion of the executors (not the trustees), but the probate court was not bound by their suggestion. The testimony of Judge Crane shows that the order was made upon his own judgment, after considering the pecuniary standing of the makers of the note, and the fact that Mrs. Bartlett made the investment herself and renewed the note, without indorsement, from time to time until her death. The executors had a right to ask for instructions, and it was the duty of the probate court, upon application, to give them directions. If the probate court made a mistake in so doing, and complainant was dissatisfied, it should have appealed."

In the brief for defendant Lemke, counsel asserting that the probate court had statutory jurisdiction in that behalf, the following argument is made:

"Assuredly the fact that there were trust legacies to be assigned did not lessen the conceded jurisdiction of that court to assign the residue, nor the force of the decree entered. If it should be thought that the probate court ought to have so construed this will as to require the executors to pay this legacy to the trustees in cash, still, that question is barred by the decree, and not open to review in this collateral suit. Those courts have the fullest jurisdiction over the construction of wills under such circumstances."

And again:

"It is manifest that he [the probate judge] intended that the notes should be held as these investments, and

that he knew they were not assets belonging to the beneficiaries. There is nothing in the decree or record anywhere in conflict with this, nor is there the slightest pretext for calling these notes assets after they came to the trustees. They were no doubt assets of Mrs. Bartlett's estate until they were assigned to the trustees, and then they at once became investments, for such was that court's decree. For another clear and conclusive reason these notes were not assets: They never belonged to the beneficiaries at all, until they were assigned to the trustees by the probate court's decree, and then that decree fixed their status as being not debts to be collected, but as legacy investments to be held for them. Without intending to make any admission, we might admit that it is the duty of the fiduciary to promptly collect ordinary assets in the form of notes and the like. But we deny that that rule, if right, applies here."

There was no occasion to construe the will, and the probate court was not asked to and did not construe it. The trustees were not appointed by the court, but by the will. *Gibney* v. *Allen*, 156 Mich. 301 (120 N. W. 811); *Wooden* v. *Kerr*, 91 Mich. 188 (51 N. W. 937). Nor did they ask the court for instructions.

Counsel for appellants construe the order of the court as either a direction to invest or an approval of an investment already made. It is not necessary to give it a construction favorable to either theory. In terms it approves and confirms the provision agreed upon by the executors and the trustees for paying certain legacies, not in money, but in notes. It refers to the receipts, and if they are again examined it will appear that certain notes belonging to the estate have been "accepted in satisfaction" of legacies bequeathed by the will to be invested. The record does not support the assumption that the probate court understood that the notes so accepted were to remain uncollected and represent, for an indefinite period, the trust fund. But whatever the real intention of the trustees and the court may have been, the result must be the same. The proceedings to administer an estate are essentially proceedings *in rem*. There is no residue of an es-

tate to assign until general legacies, as well as debts and expenses, have been paid. The court could properly make no order requiring a legatee of money to accept anything but money in satisfaction of the legacy. Such an order would be a nullity. It is unnecessary to consider the extent of the powers of probate courts under Act No. 253, Pub. Acts 1899. Jurisdiction to allow the final account of executors and to close an estate is not derived from this statute, and no one would be bound by the notice of such a proceeding to assume, or to suspect, that the court would incorporate in an order closing an estate and discharging executors a provision affecting rights which, upon the theory of appellants, did not attach until the estate was closed. The will gave the legacy to the executors and trustees. The legacy could not be satisfied except by payment of money unless the trustees consented. That portion of the order approving the disposition of these notes rests, therefore, upon the consent of the trustees.

We notice, in passing, that the receipt of the trustees to which the order of the probate court as well as the petition of the executors refers, describes a note for $10,000, made by the A. F. Bartlett Company, due two years after date, and a note of Alexander M. Lemke for $5,000, due two years after date, as two of the notes accepted in satisfaction of legacies. Neither note appears in the inventory of the estate of Mrs. Bartlett, and the note of Lemke does not appear in the inventory of the trust estate which the trustees filed in compliance with the statute.. Instead, this inventory describes a note of the A. F. Bartlett Company for the same amount. The receipt states, also, that the Ross Bros. notes which have been accepted are each payable to the order of A. M. Lemke. Without explanation, one would suppose that these notes were, or were to be, indorsed by the payee. The inventory of the trust estate does not so designate the notes. Complainant is not concerned with these facts except as they indicate, or

do not, that it was supposed that the probate court approved the taking of any of the notes, as an investment, and except as it may bear upon the question of complainant's acquiescence, with knowledge of the real facts, in the conduct of the trustees.

It may be added, in conclusion, that we are not prepared to hold that there is authority, statute or other, for substituting, in the first instance, the discretion and prudence of a court for that of a trustee charged by the terms of a will with the proper investment of funds.

2. Being of opinion that the case must be determined without reference to the good or bad faith of the trustees, we do not consider the question.

3. As has been stated, the trustees filed an inventory of the property comprising the trust estate. It does not indicate to which of several trusts created by the will either of the notes described attaches or belongs. At the time it was filed, none of the notes accepted in satisfaction of the legacies had become due. Thereafter, several accounts were filed, showing receipts of interest and sufficiently informing any one interested that complainant derived whatever money had been paid to it from Ross Bros. None of the accounts was allowed. The burden rested upon defendants to prove acquiescence, with knowledge, on the part of the beneficiary in the course pursued by them. The testimony fails to show knowledge. Such testimony as was given tends to prove that the trustees paid the interest collected, not to the complainant or to any of its officers, but to the treasurer of a local society.

Mr. Corning states, in a letter appearing in the record, written after the failure of Ross Bros., that he has been advised that it should not so have been paid.

The court below reached the right conclusion, and the decree is affirmed, with costs to complainant.

BROOKE, BLAIR, and STONE, JJ., concurred with OSTRANDER, C. J.

BIRD, J. I concur in the conclusion reached in this case by Mr. Justice OSTRANDER, but I am of the opinion that the delinquency which should charge the trustees personally with the payment of the trust fund is their undue renewals and extension of the note, and their failure to collect it at the proper time.