## CURRAN *v.* BARTLETT.

TRUSTS—IMPLIED AND RESULTING—SUBROGATION.

> Where a trustee, after his appointment pursuant to the provisions of a will, filed a bond in less than the amount ordered by the probate court, which never approved the bond, and where the trustee sold lands from the trust estate, without the order or sanction of the probate court, obtaining thereby funds that he employed to discharge certain mortgages on the trust property, and to purchase other lands, his acts were

invalid and the beneficiaries being infants and incompetents who could not affirm or disaffirm his acts, the purchasers of the land from the estate were entitled to a lien on the lands bought by the trustee from their funds, and were entitled to be subrogated to the rights of the mortgagees that had received payment therefrom.

Appeal from Genesee; Wisner, J. Submitted January 12, 1911. (Docket No. 76.) Decided March 31, 1911.

Bill by Hugh Curran and Daniel Kurtz against Charles L. Bartlett, trustee of the estate of Matilda P. Hitchcock, and Effie A. Gibney, Alice M. Gibney, Lyman Gibney, and Thomas J. Allen, to establish a resulting trust. From a decree granting a part of the relief claimed by complainants, all parties appeal. Affirmed.

*Jasper C. Gates*, for complainants.

*Homer J. McBride* and *John H. Farley*, for defendants.

Moore, J. A reading of the opinion in *Gibney* v. *Allen*, 156 Mich. 301 (120 N. W. 811), will aid in understanding the questions involved here.

The bill of complaint in the instant case avers the death of Mrs. Hitchcock, the leaving of a will by her which was duly probated, the appointment of Mr. Allen as executor, and the various other proceedings as stated in the opinion before referred to. The bill avers that complainant Curran on January 2, 1903, bought of the said Allen, as trustee of said estate, the "Webster 40" for $2,000; that on January 24, 1903, complainant Kurtz bought from Mr. Allen the "Chittenden 50" for $2,000; that both complainants acted in entire good faith supposing Allen had the power to sell. The bill further avers that April 14, 1902, the said Allen bought from Mr. and Mrs. Noble the "Beebe 40" for $1,500, upon which land there was a mortgage running to Mary L. Young for $665.59; that to pay for the "Beebe

40" Mr. Allen borrowed from Mr. Brown $2,000 and gave a mortgage on the "Beebe 40" and other lands. The bill of complaint further avers that, out of the money paid by Mr. Curran to Mr. Allen, the latter paid the Young mortgage, amounting to $665.59, and procured its discharge of record. The bill further avers that, out of the moneys obtained from Curran and Kurtz, said Allen paid the Brown mortgage, amounting to $2,100, and procured its discharge of record. The bill avers:

"(16) And your orators further show that the whole of the consideration which said Thomas J. Allen either individually or as such trustee paid to said William H. Noble and wife, as a consideration for the conveyance of said 'Beebe 40' to said Allen, as above set forth, was furnished by your orators to said Allen, and was paid by said Allen out of the money received from your orators in the manner hereinbefore specified."

The bill of complaint avers the commencement of certain ejectment cases to recover the lands bought by complainants. It avers that the Gibneys by accepting the money of complainants and taking the title to the "Beebe 40" ratified and confirmed the sale and conveyance by Mr. Allen of the lands deeded by him to complainants. The bill prayed for a restraint of the ejectment suits, or, in the alternative, that the purchase of the "Beebe 40" be decreed to be for the benefit of the complainants or as a third alternative relief that complainants be subrogated to the Brown mortgage and the Young mortgage. Defendants answered fully and denied that complainants were entitled to any relief. The case was heard in open court.

The record shows the following occurred upon the trial:

"It was thereupon agreed between counsel that the files and records in the ejectment suits described in paragraphs '13' and '14' of the bill of complaint, in this cause shall be considered as in evidence. It was also agreed between counsel that the order discharging Thomas J. Allen, as executor of said estate, described in paragraph '2' of the bill of complaint, in this cause, shall be considered in evidence. It was also agreed between counsel that his final

account as such executor was thereupon presented to said probate court and upon due notice and hearing was allowed.

"*Mr. Gates:* I will say to the court and counsel I am not endeavoring to make a claim as to the validity or power of Mr. Allen, strictly speaking. I recognize that the decision in *Gibney* v. *Allen,* holding that Allen never was trustee, would be fatal to a claim on our part to hold the 'Webster 40' and 'Chittenden 50' by virtue of any power under the will.

"*Mr. Farley:* Or the letters of trusteeship?

"*Mr. Gates:* That is not my theory. The theory of my bill is that Mr. Bartlett has the right to elect whether he will disaffirm or ratify. If he disaffirms, as I understand him to do by his answer, that we are then remitted to such remedies as we are able to make effective. I recognize that you have disaffirmed it. If you stand by it, we cannot hold under the deeds.

"*Mr. Farley:* If it is admitted that, Mr. Allen having been discharged as executor and having failed to qualify as trustee, his acts in making the various mortgages and of making the various deeds were void, why, of course, I do not care to cross-examine him.

"*Mr. Gates:* I am not claiming under those. I will say, in order that there may be no misunderstanding, that my claim will be that we entered under those deeds in entire good faith and made certain improvements; that some allowance should be made to us for these improvements by the court in its final decree.

"*Mr. Farley:* I do not see the necessity of making a lengthy record by even putting in these orders and petitions, except as you say that something was done by which he might have thought he was authorized to act; is that what you claim?

"*Mr. Gates:* My claim is that he was acting under the color of letters of trusteeship. He thought he had power to deed and take our money. Now, inasmuch as the act is disaffirmed by his successor, we are seeking to follow the proceeds. We claim that the 'Beebe 40' is the proceeds. That is where the case is now. I recognize that we cannot hold the title to the 'Webster 40' and 'Chittenden 50' under the decision in *Gibney* v. *Allen.* My position is that the consideration upon which we paid $4,000 —that is, Mr. Kurtz paid him $2,000 and Mr. Curran $2,000—that consideration has failed. That we now by

this suit are endeavoring to follow the money. I expect
to follow it into the ' Beebe 40 ' to show that it was paid
for entirely with our money. From that my claim will
be. that there is an implied trust to convey to us the prop-
erty which was bought and paid for by our cash."

After the case was argued, the court expressed himself
as follows:

" *The Court:* It seems as though the court ought to be
in a position to dispose of the entire matter, both the
ejectment cases and this matter. But it seems there is
some question of improvements in the ejectment cases,
and there is no proof before the court so that the court
would make any intelligent decree in respect to them. But
I am clearly of the opinion that the court would not have
authority to turn over that specific piece of land. I do
not believe that would be within the power of the court,
because there is no proof as to its value. It may have
appreciated in value to such an extent that these complain-
ants would not only get their money back, but would
make a profit besides. I can't say. I know that property
in that vicinity has greatly appreciated. Perhaps there is
some portion of that Hitchcock estate that has appreciated
pretty near a hundredfold in the last five or six years.
But I am clearly of the opinion that this estate ought not
to get the land back that it has deeded and also retain the
land that was actually paid for the money. These com-
plainants paid for the pieces they supposed they were
buying, and I think the decree of the court should be that
these complainants be subrogated. I think each of them
paid $2,000. I. think they should be subrogated to the
rights of the mortgagee in the Young mortgage and to
the rights of the mortgagee in the Brown mortgage to the
extent of $1,500, and that those two mortgages should be
revived in their favor. That would make something over
$2,165. The $1,500 would bear interest from the time it
was paid to Noble. Now, the details of the decree, of
course, you will agree upon. I find that it is a fact that
the money paid by them was used to wipe out the Brown
mortgage to the extent of $1,500, and the Young mort-
gage to the extent of whatever was due upon it—$650 and
some cents. With regard to the ejectment cases, it seems
to me that you should have made some sort of an effort
to secure an adjustment of the matter. There was no use

of that litigation going on, because certainly these complainants cannot hold the land under the decree of the Supreme Court in the other case. Cannot you gentlemen agree? There ought to be now no more expense made in this matter. Complainants' lien in this matter will be $2,165.59, and that will bear interest from the time their money was used to pay up those mortgages. They are entitled to be subrogated as of that date."

Later a decree was prepared and entered, from which decree both parties appeal; counsel for defendants saying they appeal because the complainants did. It is claimed that it was understood there was to be no appeal. That claim is denied. In his certificate to the transcript the circuit judge expresses himself as follows:

"I do further certify that upon the settlement of the decree in said cause the parties thereto by their respective solicitors did agree, upon the rental value of the 'Beebe 40' and 'Chittenden 50' above referred to, during the period of time in which the same was occupied by said complainants, and did agree upon the value of the improvements put upon said land respectively by said complainants and the amount of the taxes thereon paid by them respectively, for the purpose only of getting an adjustment of said matter in said cause and to avoid further litigation, and further that said decree does not embody or fix a compensation for improvements, rental value, or taxes for the year 1910 and subsequent years. I further certify that at the hearing in said cause the records and files in the case of *Gibney* v. *Allen*, reported in 156 Michigan, at page 301 (120 N. W. 811), were considered by me as part of the evidence, having been made so by the bill of complaint herein. Wherefore I have duly settled and signed this transcript containing the substance of all the evidence in said cause, except the records and files in the case of *Gibney* v. *Allen* above referred to, this 3d day of September, 1910."

It is the claim of the defendants that the opinion in *Gibney* v. *Allen*, 156 Mich. 301 (120 N. W. 811), decides the case against the contention of complainants; that if they have any relief it is against Mr. Allen; and that the bill of complaint should be dismissed. We think a reading

of the opinion will show the contention of counsel, as to the money of the complainants which can be traced to the "Beebe 40" which was bought by Mr. Allen, cannot be sustained.

Counsel for complainants make the following claims (we quote from the brief):

"(1) By avoiding Allen's sale to us of the 'Webster 40' and the 'Chittenden 50,' and thus depriving us of these lands for which we paid Allen an aggregate of $4,000, 'defendants' must be held to have elected to avoid all of Allen's transactions in this regard. Therefore they will not be permitted to claim the benefit of his purchase of the 'Beebe 40.'

"(2) Without our knowledge or consent, Allen paid the whole purchase price of the 'Beebe 40' with money belonging to us; a resulting trust therefore arises in our favor entitling us to this property.

"(3) If no such resulting trust arises, then we should be subrogated to the rights of the mortgagees in the Young mortgage ($665.59), and the Brown mortgage ($2,100), which Allen paid up and discharged with our money."

Taking up these propositions in the order presented:

1. There would be force in this proposition if the Gibneys were all in a position to affirm or disaffirm, but, as was shown in the opinion in *Gibney* v. *Allen*, they are not.

2. It is a mistake to say that Mr. Allen bought the "Beebe 40" with money furnished by complainants. The payment to Mr. and Mrs. Noble was made with money borrowed of Mr. Brown, secured by a mortgage not only upon the Beebe 40, but upon land belonging to the Hitchcock estate. It is true the mortgages were afterwards discharged with money from complainants.

3. Doubtless the reason why the circuit judge limited complainants' recovery to $1,500 of the Brown mortgage and the amount of the Young mortgage was because only $1,500 of the Brown mortgage entered into the purchase of the Beebe 40. So far as appears, the balance of it was used by Mr. Allen either for the estate or for his own use.

The record is clear that the money of the complainants to the amount of $1,500 and $665.59 was used to clear the liens from the " Beebe 40," and that as to those amounts the complainants should be subrogated. See *Morris* v. *Vyse*, 154 Mich. 253 (117 N. W. 639, 129 Am. St. Rep. 472).

We think the court below made a right disposition of the case.

The decree is affirmed. As both parties appealed to this court, neither will recover costs in this court.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.