MARY E. WARD AND GEORGE B. WARD v. HENRY T. MUNSON, ADMINISTRATOR, ETC.

*Mortgage foreclosure—Presumption of payment—Estoppel.*

1. In a suit to remove the cloud upon complainants' title to one of several mortgaged lots, caused by the record of the mortgage, the administrator of the estate of the mortgagee, in his answer, claimed the benefit of a cross-bill, and prayed for a decree of foreclosure of the mortgage. On the hearing the mortgage, which contained a stipulation for the release of the lots as sold by the mortgagor, was put in evidence. Several of the lots had been sold, and the indorsements upon the mortgage related to said lots, and the balance of the mortgage debt was claimed by the defendant to be a lien upon complainants' lot. The mortgage bond was not produced, and the counsel for the defendant stated to the court that it was lost. And it is held that the law would presume, in the absence of proof to the contrary by the production of the bond, or other evidence repelling such presumption if the bond could not be produced, that the debt was paid when due; citing *Bailey v. Gould*, Walk. Ch. 478; *Bassett v. Hathaway*, 9 Mich. 28; *George v. Ludlow*, 66 Id. 176.

2. The non-production of the bond was not sufficiently explained by the testimony of one of the counsel for the defendant administrator that the witness advised said administrator,

as also the executor in his lifetime, and his son after his death, to make a search for the bond, it not appearing that such search was ever made.

3. The deed to the person through whom complainants derived their title was a full warranty deed, except as against the mortgage sought to be foreclosed, which was excepted from the operation of the covenants of warranty. The grantee and his family occupied the premises under said deed up to the time of his death, a period of 16 years, after which, and up to the time of the commencement of suit, complainants remained in actual and open possession. No proof was offered to show that the grantee, or any of his family, were ever called upon, during all of that time, to pay said mortgage. And it is held that, while the exception in the deed was evidence that the mortgage was not paid at the time the deed was executed, and that the grantee took the property subject to it, yet, taken in connection with the facts above stated, the presumption of payment of the mortgage arising from the non-production of the bond was not rebutted.

4. Negotiations were had during the lifetime of the grantee for a compromise of the claim under the mortgage, and at one time the parties agreed upon the amount to be paid when the proper papers were executed, but did not agree upon what the nature of the papers should be, the grantee or his wife, one of the complainants, insisting that an administrator *de bonis non* should be appointed, and a conveyance made by him. Such administrator was appointed, and a contention then arose over the question of costs of those proceedings, the grantee and his wife refusing to pay the same, and the negotiations came to an end. And it is held that they had a right to buy their peace, and that complainants' rights are not affected by such incomplete negotiations.

Appeal from Kent. (Grove, J.) Submitted on briefs May 9, 1895. Decided June 4, 1895.

Bill to remove a cloud from complainant's land. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*Albert Crane,* for complainants.

*Sweet, Perkins & Judkins,* for defendant.

LONG, J.  Complainants filed this bill to remove a cloud from the title to lot 5, block 6, of Lewis Porter's addition to the city of Grand Rapids. The claimed cloud upon the title is a mortgage executed by Leander A. Forward to Lewis Porter on June 29, 1870, and recorded July 1, 1870. It appears that Forward, at the time of the execution of this mortgage, was the owner of the lot in question. The title to the lot came to the complainants through several *mesne* conveyances.

It is claimed:

1. That this mortgage has been paid.

2. That it is barred by the statute of limitations.

January 11, 1881, Lewis Porter died. His executors filed an inventory of his estate, but this mortgage was not included. The mortgage, it is claimed, was subsequently discovered among his papers, and application was made to the probate court of Kent county for the appointment of an administrator *de bonis non*. This order was made on May 8, 1893, appointing the defendant. Claim was then made for the payment of the mortgage, and attempts were made to obtain a settlement. Upon the filing of the bill the defendant answered, and claimed the benefit of a cross-bill, asking a decree of foreclosure of the mortgage. The case was heard in open court, and a decree entered, finding that the mortgage had been paid, and directing its discharge of record, with costs to complainants.

We think but two questions need be discussed.

1. It appears that Forward deeded this lot to Linsley on October 2, 1873, and on August 24, 1877, Alfred Ward, the husband of complainant Mary E. Ward, purchased and went into possession. From that time forward he lived there, until his death, in June, 1893. His wife and children still occupy the premises. Mrs. Ward testifies that they paid $2,000 for the lot, and at the time of the purchase she heard nothing about the mortgage, and she says she does not think any deduction was made from the purchase money by reason of it. The mortgagee,

Lewis Porter, resided in the state of New York, and, so far as the record shows, no claim was made under the mortgage by him, and no claim was made under it until about the year 1891. The mortgage was to become due in five years from its date, according to a certain bond of even date, executed by Forward to Porter. The defendant sets up in his answer that the mortgage was a subsisting lien, but that it had been mislaid, and "that this defandant did not know of its existence until on or about the 2d day of April, 1891, when he accidentally discovered the same among certain papers belonging to the estate of said Lewis Porter." There is no allegation in the answer or cross-bill that the bond to which the mortgage is collateral was ever in the possession of the defendant, or that it had been lost or destroyed by accident. On the hearing the original mortgage was put in evidence. It did not show any of the principal or interest paid, so far as the complainants' lot is concerned. The mortgage was originally given for $1,750, and covered several lots; and by a stipulation in the mortgage it was to be released as the lots were sold. Several lots were sold, and the indorsements upon the mortgage relate to those sold. It was claimed that the remainder of the mortgage of $350 and interest from date was a lien upon the complainants' lot. When the mortgage was put in evidence, the court asked about the bond, and counsel for defendant stated, "The bond is lost." It was not produced upon the trial.

It appeared that Mr. Porter, the mortgagee, was dead. His administrator *de bonis non* lived out of the State. Mr. Blair, one of the executors under the will, who resided in his lifetime at Grand Rapids, was dead. The only proof of the loss of the bond was that of Mr. Sweet, one of the defendant's counsel, who testified:

"I might say in regard to the bond that I caused a search to be made by Mr. Munson, and also Mr. Blair, and since his death by Charles Blair, for the bond, and have not been able to find it among any of Mr. Porter's papers, or anywhere; and this mortgage was only found after the estate had been closed."

This was not a sufficient explanation of the reason for the non-production of the bond. The defendant was asserting the mortgage as a valid lien upon the premises. The law would not raise a presumption of non-payment, but of payment when due, unless the contrary was shown by the production of the bond, or other evidence repelling the presumption of law when the bond could not be produced. *Bailey v. Gould*, Walk. Ch. 478. In *Bassett v. Hathaway*, 9 Mich. 28, the bill was filed to restrain the foreclosure of a mortgage. The notes were not produced, and it was said:

"It was held in *Bailey v. Gould*, Walk. Ch. 478, that, unless the note accompanying a mortgage is produced or accounted for, it must be presumed paid as against the party setting up the mortgage. This is in accordance with well-settled principles. In the case now before us, the notes are not produced, and we are entirely without evidence either of their existence or ownership at the present time."

In *George v. Ludlow*, 66 Mich. 176, the cases of *Bailey v. Gould* and *Bassett v. Hathaway* were referred to, and approved. It was further said:

"For aught that appears in this case, Mr. Pearl might have receipted payment of the notes and mortgage before he died, and, if they were produced, might be found to furnish the evidence establishing the fact. * * * A decree will not be made on the foreclosure of a mortgage without producing the securities, unless their absence is accounted for by clear and conclusive proof."

In *Bergen v. Urbahn*, 83 N. Y. 49, the action was to foreclose a mortgage. Upon the hearing the plaintiff did not produce the bond, nor account for its non-production. It was said: The case "is subject to the rule which makes the non-production of the bond referred to in the mortgage evidence of the non-existence or discharge of the mortgage debt, and when unexplained, is conclusive against the plaintiff's right to recover." See, also, *Buckmaster v. Kelley*, 15 Fla. 180; *Butler v. Washington*, 28 S.

C. 607; and *Field v. Anderson*, 55 Ark. 546, where the same doctrine is laid down.

Mr. Sweet's testimony only goes to the extent of showing that he advised Mr. Munson and the Blairs to make search. Whether they did or did not does not appear. Mr. Munson lives in the state of New York. He was one of the executors under the will of the mortgagee. Mr. Forward, the mortgagor, is not produced, and the case utterly fails to show that the bond was lost, or whether it had been paid and delivered up to Forward, who executed it. Aside from these considerations, there is a strong presumption of payment arising out of the facts that Lewis Porter, in his lifetime, never, so far as shown by this record, called upon Mr. Ward for payment, and the lapse of time after the mortgage became due to the date when it was found among Mr. Porter's papers, as well as the fact that the mortgage was not mentioned in the inventory of the property of the estate of Mr. Porter.

Counsel for defendant contended that, inasmuch as the deed from Allen J. Porter to Mr. Ward contained the exception that the premises were "free from all incumbrances whatever, except a certain mortgage executed by L. A. Forward to Lewis Porter, and that he will, and his heirs, executors, and administrators shall, warrant and defend the same against all lawful claims whatsoever, except as against the above-mentioned mortgage," therefore no presumption of payment arises. It would be evidence that the mortgage was not paid at that time, and that Ward took the property subject to it; but that deed is dated in August, 1877, and Alfred Ward and his family have been in actual and open possession of the premises ever since, and yet no proof is offered to show that Ward, or any of his family, were ever called upon to pay it during those years. These facts would not rebut the presumption of payment of the mortgage which arises from the non-production of the bond.

2. Contention is made that the mortgage was recog-

nized as a subsisting lien by Mr. Ward and by Mrs. Ward after it was found.   It appears that an effort was made to compromise the matter, and at one time there seems to have been an agreement upon the amount to be paid when the proper papers were executed; but the parties did not agree upon what the nature of the papers should be.   Complainant or Mr. Ward insisted that an administrator *de bonis non* should be appointed, and a conveyance made by him.   Such administrator was appointed, and a contention then arose over the question of costs of those proceedings.   The Wards refused to pay those expenses, and negotiations came to an end.   There is nothing in the record showing that in those negotiations the Wards recognized the mortgage as a subsisting lien.   They had a right to buy their peace.

It becomes unnecessary to discuss the question of the statute of limitations.

We think the court below properly held the mortgage paid, and that decree will be affirmed, with costs.

The other Justices concurred.