SMITH *v.* McCLUSKEY.

1. PRINCIPAL AND SURETY—DEFAULT BY TRUSTEE—WEIGHT OF EVI-
DENCE.
   In action against trustee and sureties on his bonds, finding of
   trial judge that securities as listed by trustee in his report
   were owned by him at time second bond was approved by
   probate court, *held*, not against great weight of evidence.

2. SAME—TRUSTS—UNSECURED  PROMISSORY  NOTE—LIABILITY  OF
SURETY FOR PROCEEDS.
   While it is generally accepted rule that it is not prudent to
   invest trust funds in unsecured promissory notes, yet if such
   note was paid to trustee after his bond was given, the surety
   thereon would be liable to account for its proceeds on default
   of trustee.

3. SAME—PRESUMPTION OF PAYMENT OF NOTE.
   In action against trustee and sureties on his bonds, where surety
   disclaimed liability for amount of unsecured promissory note
   accepted by trustee, trial court properly held that there was
   presumption that note had been paid to trustee in absence of
   showing to contrary by production of note itself or other evi-
   dence repelling said presumption.

4. BILLS AND NOTES—WHEN PAYMENT OF NOTE NOT PRESUMED.
   In action brought to enforce payment of unsecured promissory
   note in hands of payee or assignee, rule that law presumes
   payment is not applicable, but in such case payment is made
   matter of affirmative defense (Mich. Court Rule No. 23, § 3),
   and burden of proof is on defendant.

5. APPEAL AND ERROR—PRINCIPAL AND SURETY—CONCURRENT LIA-
BILITY.
   In action against trustee and sureties on two bonds given by
   trustee, where judgment was against surety on second bond
   only, from which plaintiff did not appeal, question of con-
   current liability is not before Supreme Court.

Personal liability of trustee for loss of trust estate from invest-
ments, see annotation in 44 L. R. A. (N. S.) 873.

Error to Sanilac; Boomhower (Xenophon A.), J. Submitted January 8, 1931. (Docket No. 56, Calendar No. 35,272.) Decided April 7, 1931. Rehearing denied June 1, 1931.

Assumpsit by Grant H. Smith, Sanilac probate judge, for the use and benefit of Arthur A. Hartshorn, against C. E. McCluskey and others on two surety bonds. Judgment for plaintiff against defendant Fidelity & Deposit Company, and it brings error. Affirmed.

*Alfred H. Sauer,* for plaintiff.

*Robert J. West,* for defendant Harry H. Hartshorn.

*Mark L. Rowley (Robert W. McKenzie,* of counsel), for defendant Fidelity & Deposit Company.

SHARPE, J. This case was tried before the court without a jury. He filed findings of fact which may be summarized as follows: In the last will and testament of Arthur H. Hartshorn, he provided for the payment by his executors to the defendant Mc-Cluskey, as trustee, of certain moneys for the use and benefit of his son, Arthur A. Hartshorn. It seems undisputed that the sums so received by him and interest thereon, less advances made to Arthur, pursuant to the terms of the trust, amounted at the time of the trial to the sum of $6,440.37. McCluskey qualified as such trustee by giving a bond with Harry H. Hartshorn and D. R. Brown as sureties in the sum of $10,000, which was approved by the judge of probate on May 3, 1926. Harry H. Hartshorn sought to be relieved from his obligation under said bond, and McCluskey, at the request of the probate judge, filed an account in the probate court, and on July 12, 1927, filed a new bond, with the

defendant Fidelity & Deposit Company of Maryland as surety, in the sum of $6,000, which was duly approved.

Arthur A. Hartshorn became 25 years of age on January 8, 1929, and was then entitled to receive the corpus of the trust fund. On May 27th following, McCluskey, as such trustee, was cited to appear before said court to show why he had not settled and closed the matters of his said trust, and, not appearing, the probate court authorized the bringing of this action for the recovery of the moneys due Arthur A. Hartshorn from said trustee. The sureties on both bonds were made parties defendant.

The last finding of fact reads as follows:

"The default of the trustee, C. E. McCluskey, occurred after July 12, 1927, the date of the approval of the second bond hereinbefore mentioned by the said probate court. Such default consisted in the conversion of the remainder of the said trust funds belonging to the said Arthur A. Hartshorn."

Based on these findings, the trial court concluded as matter of law that—

"The second bond was a substitute bond; the sureties on the former bond were released except for liability on account of defaults of the trustee committed prior to the approval of the second bond by the probate court; and the surety on the second bond is liable for all defaults of the trustee occurring after the approval of such bond by said court."

McCluskey had not been served with process. A judgment in favor of the plaintiff against the Fidelity & Deposit Company for $6,000 was entered, of which it seeks review by writ of error.

It proposed certain amendments to the findings of fact. It requested the court to substitute for the last of such findings the following:

"The default of the trustee, C. E. McCluskey, occurred prior to July 12, 1927, the date of the approval of the second bond by the probate court, except as to the sum of $500, which was received by the said trustee on November 5, 1927, and as to this sum the default of the said trustee in the amount of said $500 occurred subsequent to July 12, 1927."

In the report filed by McCluskey above referred to, he listed certain securities as held by him as trustee for "Arthur A. Hartshorn & Gladys Scholer." It appears that he was also a trustee for Mrs. Scholer, a sister of Arthur. In it he acknowledged that he had received for the estate of Arthur A. Hartshorn moneys to the amount of $6,075.02, and stated that he had paid to him $975.06. The list of securities as undisposed of and moneys on hand amounted in all to $8,007.86, but it was in no way indicated to which estate they belonged. It seems to be conceded, however, that the amount thereof included all sums at that time in his hands as trustee for Arthur A. Hartshorn. Harry H. Hartshorn, a brother of Arthur and a surety on the first bond, testified that he saw the report in which these securities were listed and asked McCluskey about them on July 16th or 17th, after the second bond was given, and that they were then shown to him by McCluskey and he made a list of them in a memorandum book, and he produced the book.

The Fidelity Company insists that the great weight of the evidence supports its claim that these securities, except a promissory note hereafter referred to, were the property of the trustee's father, Heber V. McCluskey. His testimony was taken by deposition. He admitted that, while the securities thus listed (real estate mortgages) were payable to

him, he had assigned them to his son ''and he had them for a while.'' As to two of them he said:

''That was all the mortgages I had left at that time and I assigned them at his request and he sent them back and asked me to advance the money on them and I took them back and sent the Laufer mortgage $500 and the Grice mortgage $400 and gave him $900.''

On cross-examination he testified:

''*Q.* You knew he was going to list these mortgages in this particular account?
''*A.* I expected he would.
''*Q.* That is, Arthur Hartshorn?
''*A.* Yes.
''*Q.* And you knew that was what he was going to use it for?
''*A.* I didn't know what he was going to use it for. I didn't know anything more about his business than a stranger would know. I don't know what he did with any of it. I know I let him have it and that is all I know because the presumption was he was paying his debts, using it in a legitimate manner. That is what I supposed.
''*Q.* Particularly in the Arthur A. Hartshorn matter, wasn't it?
''*A.* I think so, yes; but I don't know.''

The trial court was apparently satisfied from the evidence submitted that the trustee was the owner of these securities at the time the second bond was approved and filed. We cannot say that his finding in that respect is against the great weight of the evidence.

Among the items of securities listed by the trustee in his account was a promissory note, executed by Charles Merriman, in the sum of $1,952.94. Coun-

sel for the appellant proposed an amendment as to this item, reading as follows:

"As to this item the court finds that this was not and is not a proper or legal investment for trust funds, and therefore, the trustee had defaulted and devastavit of the trust funds had occurred .as to this amount prior to July 12, 1927."

This court has declined to lay down "any definite rule as to the class of securities in which trustees may legally invest." *In re Buhl's Estate,* 211 Mich. 124, 131 (12 A. L. R. 569). In *Michigan Home Miss. Soc.* v. *Corning,* 164 Mich. 395, 402, the court said:

"It is a generally accepted rule that it is not prudent to invest trust funds in unsecured notes of an individual or of a partnership. We have found no decision which announces a contrary rule where the trust contemplated an investment of a permanent nature."

But, conceding the fact as stated in the proposed amendment that the unsecured promissory note was not such an investment as would relieve the sureties on the first bond, yet if it was paid to the trustee by the maker after the second bond had been given, the surety thereon would be liable to account for its proceeds. The record does not disclose what became of this note. It does not appear that proof concerning it was not available.

In the early case of *Bailey* v. *Gould,* Walk. Ch. 478, 483, wherein proceedings were taken to foreclose a mortgage securing a promissory note and the note was not offered in evidence, the court said:

"The promissory note is not in evidence, and, for aught that appears from the testimony, it may have been paid. The law does not raise a presumption of nonpayment, but of payment when due, unless the contrary is shown by the production of the note, or

other evidence repelling the presumption of law, when the note itself cannot be produced.''

In *Martin* v. *McReynolds,* 6 Mich. 70, 74, the · *Bailey Case* was cited as authority for the statement—

''For the law presumes every man has done his duty, and on that raises a presumption of payment, unless the contrary is shown.''

It was also cited with approval in *George* v. *Ludlow,* 66 Mich. 176, and in *Ward* v. *Munson,* 105 Mich. 647.

This court has held that the law will presume that a member of a fraternal organization has paid the dues fixed by the by-laws. *Petherick* v. *Order of the Amaranth,* 114 Mich. 420; *Rousseau* v. *American Yeomen,* 186 Mich. 101. See, also, *Bergen* v. *Urbahn,* 83 N. Y. 49; 41 C. J. p. 794. The rule thus stated does not apply when an action is brought to enforce the payment of such a note in the hands of the payee or his assignee. In such a case, payment is made a matter of affirmative defense (Michigan Court Rule No. 23, § 3), and the burden of proving it is on the defendant.

We are unwilling to reverse the finding that the proceeds of this note came into the hands of the trustee after the second bond was given. As to the cash in his hands, there is no evidence that he did not have it at the time the second bond was filed.

The probate judge testified that he informed Harry H. Hartshorn, one of the sureties on the first bond, that ''automatically we considered the discharge of the bond as soon as the new bond was filed.'' It is urged that he was in error in doing so; that the statutory requirement as to notice had not been complied with. 3 Comp. Laws 1929,

§ 15880; *Rice* v. *Wilson,* 129 Mich. 520. While the action was against McCluskey and the sureties on both bonds, the judgment was entered against the Fidelity & Deposit Company alone. The plaintiff not having assigned error, the question of concurrent liability is not before us for consideration.

The judgment is affirmed.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.