CHAPIN v. CHAPIN.

1. COURTS — JUDGMENTS OF PROBATE COURTS MAY NOT BE SET ASIDE BY CHANCERY COURTS.

A proviso to section 13764, 3 Comp. Laws 1915, providing that circuit courts in chancery should not thereby be deprived of concurrent jurisdiction as originally exercised with probate courts over estates, *held*, not to confer power on them to set aside judgments of the probate courts, especially in view of the fact that provision for appeals is made in the following sections.[1]

2. JUDGMENT—ORDERS OF PROBATE COURTS ARE IN EFFECT JUDGMENTS.

The orders of probate courts disposing of estates have the force and effect of judgments in courts of record, are *res adjudicata* of the matters therein disposed of, and therefore may not be collaterally attacked.[2]

[1]Courts, 15 C. J. §§ 418, 440 (1926 Anno); [2]Id., 15 C. J. § 442; Judgments, 34 C. J. § 824.

3. Trusts—Trustees Under Will Have No Power Until Granted Letters by Probate Court.

> Under 3 Comp. Laws 1915, §§ 14054-14056, the trustees named in a will had no power or authority to act until letters of trusteeship were granted by the probate court.[3]

4. Executors and Administrators—Heirs or Devisees Not Entitled to Realty Until Estate Settled.

> Heirs or devisees are not entitled as matter of right to the possession of real estate until the estate is fully settled, and if possession be taken with the executor's consent it is held subject to liability to the executor to make contribution for any deficiency in the personalty necessary to pay the debts (3 Comp. Laws 1915, § 13799).[4]

5. Courts—Orders of Probate Court Although Formal Have Effect of Judgments.

> Although many of the orders of probate courts may be said to be merely formal, where no objection is made they have the force and effect of judgments and are not subject to collateral attack.[5]

6. Trusts—Letters of Trusteeship Not Subject to Collateral Attack.

> An order of the probate court granting letters of trusteeship to trustees named in a will, on petition of the executors after filing their final account, is necessarily a construction of the will, and is not subject to collateral attack on the ground that by the provisions of said trust it extends beyond the continuance of two lives in being at its creation in violation of 3 Comp. Laws 1915, §§ 11532, 11533.[6]

Appeal from Berrien; White (Charles E.), J. Submitted October 24, 1924. (Docket No. 155.) Decided December 31, 1924.

Bill by Homer Coolidge Chapin and others against Emily C. Chapin and others for the construction of a will. From a decree for plaintiffs, defendants appeal. Reversed, and bill dismissed.

---

[3]Wills, 40 Cyc. p. 1763 (1926 Anno); [4]Executors and Administrators, 24 C. J. § 603; [5]Courts, 15 C. J. § 442; Judgments, 34 C. J. § 824; [6]Wills, 40 Cyc. p. 1763 (1926 Anno).

*Campbell, Bulkley & Ledyard* (*Henry Ledyard* and *Stuart B. White,* of counsel), for plaintiffs.

*Humphrey S. Gray* and *Wilson, McIlvaine, Hale & Templeton,* for defendants.

SHARPE, J.    Charles A. Chapin, a resident of Cook county, Illinois, died in Chicago on October 22, 1913, leaving a last will and testament.    In the second paragraph thereof he devised and bequeathed the residue of his estate to his wife, Emily C. Chapin, and his seven children, naming them, as trustees. The trustees are given—

"the same power of investment, management and sale of the said trust estate, and of every part thereof, which they would possess if they were the absolute owners thereof; subject only to the condition that the said property or the proceeds thereof shall be held upon the trusts and for the beneficiaries herein specified and provided."

The purpose of the trust is thus stated:

"The foregoing trust is created by me for the purpose of providing for the comfortable maintenance of the beneficiaries under the said trust, and it is my will, and I direct, that the said beneficiaries during the continuance of said trust shall have no power to anticipate, assign, alien or otherwise dispose of any interest which they may have, either in the income or principal of said trust estate while the same remains in the hands of the trustees under this will, and that the same shall not be subject to be taken from said beneficiaries by their creditors or by process of law."

It is also provided:

"The said trust shall terminate upon the death of the last survivor of my said wife and children, and upon the termination of said trust the trust estate then in the hands of said trustees shall go to and vest in the then surviving lawful issue of my said children *per stirpes.*"

The testator died seized of real estate in the State of Illinois and also in the counties of Berrien, Osceola and Dickinson in this State. The will was probated in Cook county, and by ancillary proceedings in the probate court for Berrien county on December 8, 1913. His wife and two of his sons were named as executors, and they duly qualified and acted as such. An inventory was filed which included the real estate and some personalty in Michigan. Subsequent proceedings were had in conformity with the statute and the final account allowed. Homer C. Chapin, one of the executors, then filed a petition, reciting the proceedings had and taken, and asked that the court grant unto the wife and children, all of whom were then living,—

"letters of trusteeship, authorizing and empowering them to manage and control the property of said estate situate in said State of Michigan in trust under the conditions and trusts imposed in said last will and testament of said Charles A. Chapin, deceased, upon the execution of a proper bond to the judge of said probate court, and his successors, in such form and amount as shall be ordered and approved by said court."

On January 15, 1917, an order was entered by the probate court pursuant to said petition, and on the same day letters of trusteeship were issued to the persons named as trustees in the will. In these letters, after reciting their appointment under the will, they were given—

"full power and authority to manage and faithfully dispose of according to law and the will of said Charles A. Chapin, deceased, all the real and personal estate belonging to you as trustees," etc.

Acting under these letters and the power conferred by the will, the trustees took possession and control of the real and personal property of the testator. No question has ever been raised as to the validity of the clause creating the trust until just prior to the filing of the bill of complaint herein on February 2,

1924. In it the court is asked to construe the will and determine whether its provisions creating the trust violate sections 11532 and 11533 of the Compiled Laws of 1915 because the trust period extends beyond the continuance of two lives in being at the creation of the trust estate.

We are met at the outset by the claim of the defendants, stated as follows:

"The decree of the trial court should be reversed because the whole case is collateral attack upon the judgment of the probate court directing the issuance of letters of trusteeship to the trustees of the Chapin trust."

The Constitution provides for probate courts. Their jurisdiction, powers and duties are to be prescribed by law. By section 13764 *et seq.*, 3 Comp. Laws 1915 (chap. 51), jurisdiction is conferred on judges of probate:

"1. Of all matters relating to the settlement of the estates of all deceased persons, whether testate or intestate," * * *

leaving any estate within such county to be administered.

"2. Of trusts and trustees in the execution of wills and administration of estates of deceased persons."

Other provisions not here material follow. A proviso to this section reads:

"*Provided, however,* That the jurisdiction conferred by this section shall not be construed to deprive the circuit court in chancery in the proper county of concurrent jurisdiction as originally exercised over the same matter."

This proviso does not assume to give the chancery court the power to set aside judgments of the probate court. Provision is made in the sections which follow for appeals by which such judgments may be reviewed

in the circuit court. Section 13773 *et seq.* provide for the probate of wills. Section 13787 provides that, after due administration by the executor or administrator, the estate—

"shall be disposed of according to such will, so far as such will may operate upon it; and the residue shall be disposed of as is provided by law," etc.

Subsequent sections (chap. 52) contain provisions announcing rules of law to be followed by the judge of probate in the administration of the estate. These include provisions for unborn children, children unintentionally omitted from the will, the issues of deceased legatees, etc. There is also provision defining the rights of the widow in the event that she elects to take otherwise than under the will.

The succeeding chapter (53) contains provisions for the administration of estates of intestates. The chapters which follow prescribe particularly the duties of the executor or administrator in collecting the assets of the estate, payment of debts, etc.

Chapter 57 is entitled "Of the Partition and Distribution of Estates." It contains specific provision for the distribution of personalty not disposed of by will. The third and fourth sections (3 Comp. Laws 1915, §§ 13915, 13916) read as follows:

"SECTION 3. After the payment of the debts, funeral charges and expenses of administration, and after the allowances made for the expense of the maintenance of the family of the deceased and for the support of the children under ten years of age, and after the assignment to the widow of her share in the personal estate, or when sufficient effects shall be reserved in the hands of the executor or administrator for the above purposes, the probate court shall, by a decree for that purpose, assign the residue of the estate, if any, to such persons as are by law entitled to the same, subject, however, to the widow's right of dower, if there be a widow of the deceased entitled

to dower, and her dower shall not have been assigned and set off to her.

"SEC. 4. In such decree the court shall name the persons and the proportions or parts to which each shall be entitled; and such persons shall have the right to demand and recover their respective shares from the executor or administrator, or any other person having the same or any part thereof, after the expiration of sixty days from the date of such decree, unless an appeal shall have been taken therefrom, in which case they shall have the same right immediately upon the final termination of such appeal."

The sections following provide for partition of the real estate. The terms of the partition decree are made conclusive on all the heirs and devisees. Section 18 (§ 13930) provides:

"Any person aggrieved by any order, decree or denial, of a probate court, in pursuance of the provisions of this chapter, may appeal therefrom as provided in other cases."

We have referred to these provisions at length to show the extent of the power conferred on the probate court in the administration of estates, whether of testates or intestates. Aside from those contained in sections 13787 and 13915, providing for the assignment of the residue, there can be no doubt that the orders made have the force and effect of judgments in courts of record and are *res adjudicata* of the matters therein disposed of. Decisions of this court so holding were cited and quoted from in *Calhoun* v. *Cracknell,* 202 Mich. 430.

As appears from the statement of facts, the executors fully administered the estate, filed their final account, had it allowed, and petitioned the court to grant unto the persons named in the will letters of trusteeship, and such letters were issued pursuant to an order made therefor. The trustees had no power or authority to act until such order was made. 3 Comp. Laws 1915, §§ 14054-14056; *Gibney* v. *Allen,*

156 Mich. 301. While these sections contain provisions requiring trustees to give bonds, make and return inventory, render accounts, etc., the authority in the probate court to make the order rests on the provision in section 13787.

The statute (§ 13850) gives the executor or administrator the right to the possession of the real estate—

"until the estate shall have been settled, or until delivered over by order of the probate court to the heirs or devisees."

Under a proviso thereto the heirs or devisees may make application to the probate court for an order that possession be delivered to them and, if it appear—

"that there are no debts or liabilities outstanding and unpaid against said estate, or that the personal estate of said deceased is amply sufficient for the payment of all claims or liabilities,"

such an order will be made.

Section 13799 provides that, if possession be taken by devisees and legatees by consent of the executor, the holding by them is subject to liability to the executor to make contribution for any deficiency in the personalty necessary for the payment of the debts or to make up the share of a child born after the making of the will, or of a child or the issue of a child omitted in the will.

These provisions have been construed in many cases. They are collected and discussed in *Howes* v. *Barney,* 199 Mich. 569, and *Sylvester* v. *Button,* 207 Mich. 24. The holding has been that where an heir or devisee enters into possession with the consent of the executor under section 13799 his possession may not be disturbed unless it appears that the real estate must be used for the payment of debts. But he is not entitled to such possession as a matter of right until the estate is fully administered and an order made assigning it

to him. Title, of course, passes by virtue of the will. The court must, however, construe the will to determine to whom the assignment shall be made. If the devise be plainly expressed, and there are no applicable statutes or qualifying provisions, there is no room for construction as this word is ordinarily understood, but if his right be questioned it must be determined then and there by the court. Upon it rests the duty to deliberate, decide and declare by its order the legal effect of the will upon the property of the testator then in the hands of the executor as an officer of the court for distribution.

Many of the orders made by the court may be said to be merely formal orders. If no objection be made, the administrator named in the petition is appointed. The legal right of another to such appointment is not considered. And yet there can be no question but that such an order is not subject to collateral attack. There are no parties litigant as in the ordinary proceedings in the circuit court. The proceeding is one *in rem* to administer the estate of one no longer able to look after it, and distribute it to the persons entitled to it under the provisions of the statute or the will.

The trial court in its opinion says:

"No one seriously contends that the probate court in issuing letters of trusteeship intended to pass upon this question. The order was a formal order issued as such orders are usually issued by the probate court, where there is no contest. Surely, it was never in the mind of the probate judge, who made the order, that he was passing upon the validity of this will,"

and he suggests that it would be illogical to hold that by accepting the trust the trustees barred themselves from applying to a court of chancery for a construction of the will. It may be noted that the trustees are not here seeking the aid of the court to advise them as to the manner in which they shall execute the

trust. They are here asking the court to determine whether or not their appointment was made in violation of the statute; in other words, whether they have any right to act at all. This the probate court did determine as to both the realty and personalty when he made the order followed by the letters of trusteeship committing such property to them under the trust provision of the will.

We have not overlooked the decision in *Wooden* v. *Kerr,* 91 Mich. 188, wherein it was said that "No action of any court was necessary to complete this trust in them (the trustees)," nor the following from *Michigan Home Missionary Society* v. *Corning,* 164 Mich. 395:

> "There was no occasion to construe the will, and the probate court was not asked to and did not construe it. The trustees were not appointed by the court, but by the will."

The decision in the *Wooden Case* rested on the fact that, without appointment or the issue of letters, the person named as trustee had assumed to act as such, and it was held that he was "estopped to assert that he was an executor merely, and not a trustee." The *Corning Case* involved a setting aside of a particular security by the trustees as a compliance with a specific bequest ordered to be invested. The claim was made that the court by an order had in effect approved of such action. In *Gibney* v. *Allen, supra,* decided much later than the *Wooden Case,* it was held that the failure of a person named as trustee to qualify as such, even after appointment by the probate judge, "amounts to a disclaimer," and that any acts done by him, apparently acting as trustee, are in law his acts as an executor. See, also, *Wessborg* v. *Merrill,* 195 Mich. 556 (L. R. A. 1918E, 1074). In *Re Erdman's Estate,* 179 Mich. 567, the power of the probate court to construe the trust provision and to appoint a trustee not

named in the will as to specific property was upheld. We are impressed that the language quoted in both those cases was *obiter* and used without due consideration as to its effect upon facts such as we have before us.

The executors after their appointment and qualification could not be lawfully discharged until they had turned over the property in their hands as shown by their final account to the persons lawfully entitled to it. The duty does not rest upon them to determine such persons. It rests upon the court. To do so the judge of probate must construe the will, that is, determine from its terms to whom the executors should make delivery. Having done so by his order committing the management, control and disposal of the trust property to the trustees, we are of the opinion that their right thereto is not subject to collateral attack. *Dudley* v. *Gates,* 124 Mich. 440; *Riebow* v. *Ensch,* 220 Mich. 450; and *Calhoun* v. *Cracknell, supra,* may be read with profit. See, also, the authorities cited and quoted from in *Thompson* v. *Thompson, post,* 526, handed down herewith.

The decree appealed from is reversed and set aside, and one may be entered here dismissing the bill of complaint, with costs to appellants.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.