CLEVELAND *v.* SECOND NATIONAL BANK &
TRUST COMPANY.

1. TRUSTS—CHARITABLE TRUSTS—PUBLIC POLICY.

The public policy of this State regards with favor trusts for religious, educational, charitable and benevolent purposes (CL 1948, § 554.351 *et seq.*; § 554.381 *et seq.*).

2. SAME—CHARITABLE TRUSTS—PURPOSE—INDEFINITE BENEFICIARIES.

Provisions of will providing for a trust for charitable or social welfare institutions, movements or purposes *held,* not invalid as uncertain and indefinite with respect to intended beneficiaries (CL 1948, § 554.351 *et seq.*).

3. SAME—CHARITABLE TRUSTS—INDEFINITENESS.

A measure of indefiniteness enters into any public charitable trust as the purposes to be attained, in effect, require judicial recognition thereof.

4. SAME—CHARITABLE TRUSTS—RULE AGAINST PERPETUITIES.

Trusts for public charitable purposes are upheld under circumstances under which private trusts would fail, since public charitable trusts are not within the rule against perpetuities and they must be for an indefinite number of persons.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 10, 12] 10 Am Jur, Charities § 12.
[2] 10 Am Jur, Charities §§ 28, 88.
[3] 10 Am Jur, Charities § 96.
[4] 10 Am Jur, Charities § 17.
[6] 57 Am Jur, Wills §§ 1133, 1137.
[7, 8] 10 Am Jur, Charities § 52.
[9] 57 Am Jur, Wills §§ 1148, 1149.
[11] 10 Am Jur, Charities § 102.
[14] 21 Am Jur, Executors and Administrators § 539.
[15] 21 Am Jur, Executors and Administrators § 538.
[16] 21 Am Jur, Executors and Administrators § 12.
[17] 21 Am Jur, Executors and Administrators § 539; 57 Am Jur, Wills § 1034.

5. SAME—CHARITABLE TRUSTS—INCOME—SOCIAL WELFARE INSTITU-
TIONS AND PURPOSES.

Testamentary provisions establishing trust for charitable and educational provisions and permitting income to be used for charitable or social welfare institutions or purposes *held,* not open to objection that it was invalid in that testator authorized use of the income from the trust for purposes not necessarily charitable or educational (CL 1948, § 554.351 *et seq.*).

6. WILLS—CONSTRUCTION—INTENT.

The cardinal principle in the interpretation of wills is to carry out the intention of the testator if it is lawful and can be discovered and the whole will is to be taken together and is to be so construed as to give effect, if it be possible, to the whole.

7. TRUSTS—CHARITABLE TRUSTS—PERMISSIBLE PURPOSES.

The permissible purpose or scope of a public charitable trust is as varying as the wants of humanity.

8. SAME—CHARITABLE TRUSTS—PURPOSES.

A public charitable trust may have more than 1 purpose.

9. WORDS AND PHRASES—ASSOCIATED WORDS.

The meaning of a word may be ascertained by reference to the meaning of words associated with it and in its general environment.

10. TRUSTS—CHARITABLE TRUSTS.

Public charitable trusts, being of necessity, indefinite and uncertain in respect to beneficiaries, are interpreted liberally, since the imposition of a requirement of certainty of object and too great a limitation upon the discretionary powers of trustees more often tends to defeat the dominant charitable purpose of the testator than to effectuate it.

11. SAME—CHARITABLE TRUSTS—SOCIAL WELFARE PURPOSES.

The fact that the term "social welfare," was applied to organizations and purposes in connection with expenditure of income of testamentary trust set up for charitable and educational purposes, would not permit use of the income for other than charitable or educational purposes, where questioned term was associated, in each instance used, with the word "charitable," first conjunctively and then disjunctively, and the context does not indicate that the form of expression was of controlling significance.

12. SAME—CHARITABLE TRUSTS—STATUTES.

Will setting up a trust for charitable and educational purposes,

primarily for benefit of residents of city and county where
testator resided *held*, to have established a valid trust when
construed in accordance with rules set forth in pertinent
statute (CL 1948, § 554.351 *et seq.*).

13. WILLS—INTENT—CONSTRUCTION.

The intent of the testator, as specifically declared at the outset
of the will, may not be permitted to be defeated by technical
construction of a subsequent term, especially when such con-
struction is not indicated.

14. EXECUTORS AND ADMINISTRATORS—FINAL ACCOUNT—APPROVAL—
RES JUDICATA.

The failure of an heir of testator to challenge order of probate
court approving final account of the executor under will setting
up a testamentary trust and assigning residue to the trustee
is binding upon the descendant of such heir.

15. JUDGMENT—PROBATE COURT ORDER APPROVING FINAL ACCOUNT—
COLLATERAL ATTACK.

An unappealed order approving the final account of an executor
and discharging him upon effecting distribution of the prop-
erty theretofore in his hands is not subject to attack in a
collateral proceeding.

16. ESTATES OF DECEDENTS—JURISDICTION—PROCEEDING IN REM.

The administration of a decedent's estate is not in the nature
of a suit between parties but rather, a proceeding *in rem*,
and when the court has once acquired jurisdiction it is em-
powered to make all orders necessary to the proper adminis-
tration of the estate.

17. WILLS—CONSTRUCTION—APPROVAL OF FINAL ACCOUNT—RES JU-
DICATA.

The order of a court having jurisdiction to administer an estate,
allowing the executor's final account and making distribution
pursuant to a construction of the testator's will, is valid and
binding as the construction of the will, if not appealed from.

Appeal from Saginaw; Huff (Eugene Snow), J.
Submitted June 5, 1958. (Docket No. 30, Calendar
No. 47,605.) Decided October 13, 1958.

Bill by Cynthia Mills Cleveland against Second
National Bank & Trust Company of Saginaw, a na-
tional banking corporation, R. Perry Shorts and
Gerald B. Rousseau to have declared void certain
trust provisions in the will of Arthur D. Eddy, and

praying for distribution of corpus as intestate property. Bill dismissed. Plaintiff appeals. Affirmed.

*William Alfred Lucking,* for plaintiff.

*John D. Currie, Gilbert A. Currie* and *Thomas G. Long,* for defendants.

CARR, J. This case involves the interpretation and validity of certain provisions of the last will and testament of Arthur D. Eddy, a resident of Saginaw county. Testator died April 22, 1925, leaving as his heirs a sister, who was the mother of the plaintiff in the instant case, and his widow. Mr. Eddy was the owner of all of the capital stock of C. K. Eddy & Sons, a Michigan corporation, which stock, it is claimed, was valued at $3,600,000. The will was duly probated. Federal estate and Michigan inheritance taxes, together with expenses of administration, amounted to approximately $500,000.

The testator undertook to create by the tenth paragraph of his will a trust for the promotion of "charitable and educational purposes." He directed that certificates representing 1/3 of the capital stock of C. K. Eddy & Sons should pass to trustees named by him, from which property there should be created the C. K. Eddy Family Memorial Fund. The instrument set forth Mr. Eddy's reasons for his action and his desire that the people of Saginaw might be permanently benefited thereby. The income from the trust estate was directed to be applied by the trustees in accordance with the following specific provisions:

"(a) To the payment of all necessary expenses properly chargeable to the maintenance and execution of said trust estate, including said trustees' reasonable fees for services in connection therewith.

"(b) Not exceeding 50% of the net income re-

ceived from said trust estate shall be used by the trustees as donations from time to time to the Saginaw Welfare League, and to any of the charitable and social welfare institutions or movements, including any organized health programs of the city of Saginaw, or the county of Saginaw, Michigan. I hereby authorize the trustees to use their own discretion as to which particular charitable or social welfare institutions or movements of the city of Saginaw or Saginaw county shall be benefited by such donations, it being my desire that the trustees shall be free to use their own judgment in such matters and to make donations from time to time in such amounts and to such particular causes as in their judgment are most worthy and entitled to financial support. It is my expressed desire, however, that said percentage of income from said trust estate shall be actually expended by the trustees for charitable and social welfare purposes and not permitted to accumulate for any unreasonable time.

"(c) Not exceeding 30% per year of the net income received from said trust estate shall be used by the trustees to maintain or assist in the maintenance of a good uniformed band for the city of Saginaw. It is my preference that such band be operated under the direction of the city government, the trustees to reimburse the city for all necessary expenses of maintenance thereof up to but not exceeding the amount herein provided for such purpose, such payments to be made to the city from time to time as thought advisable by the trustees. If, however, the city shall at any time fail to provide such band for the benefit of its citizens, then the trustees shall have the authority to provide same at a cost per year not exceeding the amount herein provided for such purpose. If for any reason, at any time, the use of said income or any part thereof for said specified purpose shall be deemed unnecessary, impractical or unwise by my trustees, then my said trustees shall use the same for such other charitable or educational purposes for the benefit of the people

of the city of Saginaw as in their judgment are practical and wise, including the construction of buildings for charitable or educational purposes if they deem advisable, it being my expressed desire, however, that said percentage of income from said trust estate shall be actually expended by the trustees for such public purposes and not permitted to accumulate for any unreasonable period of time.

"(d) Not exceeding 20% of the net income received from said trust estate shall be used by the trustees for educational purposes by financing in full or in part deserving boys or girls, and men and women from 15 to 30 years of age, residents of Saginaw county, Michigan, in their endeavors to continue their education in any of the public schools, colleges or universities of the State of Michigan, provided always that such persons are, in the judgment of the trustees, in need of and worthy of such financial assistance.  I hereby authorize the trustees to use their own discretion at all times or that of such persons or agency as they may select for the purpose as to the particular persons who shall be benefited thereby, the amount of money to be granted them in each case and the reasonable conditions under which such financial assistance is to be granted and continued."

The eleventh paragraph of the will directed the trustees to publish a full and itemized report of the trust annually in order that the people of Saginaw may be kept informed with reference to the subject matter.  The testator further specified that in the event that any of the provisions of the will should be held invalid or ineffectual for any reason the instrument should be construed without reference to such provision or provisions.

It will be noted that subdivision (b) of paragraph 10 refers to "charitable and social welfare institutions" and also to "charitable and social welfare purposes."  Such institutions are also referred to in

the disjunctive. Emphasizing these provisions, plaintiff brought the instant suit in circuit court attacking the validity of the trust on the ground that the directions of the testator authorized the use of income from the trust for purposes not necessarily charitable or educational. It is argued that "social welfare" may be construed as including many things that may be conducive to the economic advantage of the people of the community in general, but which are not essentially of a public charitable nature. It is further contended that if subdivision (b) is invalid for the reason indicated the entire trust must fall due to the fact that the carrying out of the purposes of said subdivision are an essential part of the plan of the testator.

The public policy of the State of Michigan as expressed in legislative enactments and interpreted in decisions of this Court regards with favor trusts for religious, educational, charitable and benevolent purposes. Counsel in the instant case have emphasized the provisions of PA 1915, No 280 (CL 1948, § 554.351 *et seq.* [Stat Ann 1953 Rev § 26.1191 *et seq.*]). Said act was substantially a re-enactment of PA 1907, No 122, the sufficiency of the title of which was in question in *Loomis* v. *Mack,* 183 Mich 674, the act being sustained by an evenly divided Court. It may be noted that PA 1925, No 373 (CL 1948, § 554.381 *et seq.* [Stat Ann 1953 Rev § 26.1201 *et seq.*]), with reference to gifts, grants, devises and bequests, in trust or otherwise, for public welfare purposes, was apparently intended to classify gifts or grants for the benefit of the public welfare as analogous to such transfers for religious, educational, charitable and benevolent purposes.

Section 1 of PA 1915, No 280, reads as follows:

"No gift, grant, bequest or devise, whether in trust or otherwise to religious, educational, charitable or

benevolent uses, or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, or anything therein contained which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the object of such trust or of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. If in the instrument creating such a gift, grant, bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes, shall vest in such trustee. If no such trustee shall be named in said instrument or if a vacancy occurs in the trusteeship, then the trust shall vest in the court of chancery for the proper county, and shall be executed by some trustee appointed for that purpose by or under the direction of the court; and said court may make such orders or decrees as may be necessary to vest the title to said lands or property in the trustee so appointed."

Following a hearing in the trial court a decree was entered dismissing plaintiff's bill of complaint. The trial judge concluded that paragraph 10 of the will was not open to the objections urged by plaintiff, that the intention of the testator was to create a trust for public charitable and educational purposes, and that the provisions of the will, construed together, clearly indicated such an intent. Plaintiff has appealed from the decree, insisting here, as in the trial court, that the provisions of subdivision (b) of paragraph 10 must necessarily be construed as contemplating and attempting to authorize expenditures from the trust for purposes that may not be construed as charitable or educational. Defendants insist that the conclusion of the trial judge was correct and that under applicable rules of interpretation

the paragraph in question must be regarded as creating a trust for charitable and educational purposes within the purview of the statute above cited and quoted in part.

The suggestion in plaintiff's behalf that the language of paragraph 10 of the will is uncertain and indefinite with respect to intended beneficiaries thereunder is without merit. The language of the will indicates that Mr. Eddy, for the reasons set forth in the instrument, desired to do something of lasting benefit for the people of his community. It has been repeatedly recognized in judicial decisions that a measure of indefiniteness enters into any charitable trust. The purposes to be attained in effect require that this be so. In *Russell* v. *Allen,* 107 US 163 (2 S Ct 327, 27 L ed 397), the plaintiffs by suit in equity questioned the validity of certain conveyances in trust for educational purposes, such conveyances being "for the use and benefit of the Russell Institute of St. Louis, Missouri." It was claimed on behalf of the plaintiffs that the Russell Institute had not been established at the time of the execution of the deeds, and that the beneficiaries of the trust were uncertain and indefinite. Commenting on the objections urged, it was said, in part (pp 166, 167):

"The principal grounds upon which the plaintiffs seek to maintain their bill are that the deeds create a perpetuity; that the uses declared are not charitable; and that, if the uses are charitable, there are no ascertained beneficiaries and no donee capable of assuming and administering the trust, and the uses are too indefinite to be specifically executed by a court of chancery. But these positions, as applied to the facts of the case, are inconsistent with the fundamental principles of the law of charitable uses, as established by the decisions of this and other courts exercising the ordinary jurisdiction in equity.

"By the law of England from before the Statute of 43 Eliz, ch 4, and by the law of this country at the present day (except in those States in which it has been restricted by statute or judicial decision, as in Virginia, Maryland, and more recently in New York), trusts for public charitable purposes are upheld under circumstances under which private trusts would fail. Being for objects of permanent interest and benefit to the public, they may be perpetual in their duration, and are not within the rule against perpetuities; and the instruments creating them should be so construed as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form or manner pointed out by him cannot be followed. They may, and indeed must, be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal charity."

Counsel for appellant directs attention to *Scudder v. Security Trust Co.*, 238 Mich 318. Involved was a testamentary trust expressed as being established "for the welfare and comfort of elderly men and women who are entirely without means for their maintenance and support." In sustaining the trust the Court pointed out that the provisions of the will were sufficiently certain to permit enforcement. In the course of the discussion it was said (p 324):

"Here is a trust, a trustee capable of executing it, a definite charitable purpose, and a particular class from which the beneficiaries are to be selected."

We think it obvious that the language quoted was merely intended to indicate the nature of the controversy before the Court. On behalf of appellant it is insisted that the statement should be construed as prescribing a test to be applied in determining the validity of a trust of the nature involved in the

instant case. We are not in accord with such claim for the reason that it is apparent that the Court was referring to the facts in the case before it, and without any intent to prescribe, or attempt to prescribe, a rule of general application. It may not be assumed that there was any intent to affect, by way of dicta, decisions in other cases involving educational or charitable trusts.

Counsel for appellant also calls attention to *Wanstead* v. *Fisher,* 278 Mich 68, in which *Scudder* v. *Security Trust Co., supra,* was cited. The comment above with reference to said case is equally applicable under the facts in *Wanstead* v. *Fisher.* It may be noted further that the Court recognized that the trust, being one for educational purposes, was to be construed liberally to the end that the intention of the testatrix might be carried out. It was also recognized (p 73) that:

"It is elementary that the cardinal principle in the interpretation of wills is to carry out the intention of the testator if it is lawful and can be discovered; and that the whole will is to be taken together and is to be so construed as to give effect, if it be possible, to the whole."

The Court also cited and quoted PA 1915, No 280, above set forth in part.

The prevailing view with reference to the scope and purposes of charitable trusts is set forth in 10 Am Jur, Charities, § 52, pp 621, 622, as follows:

"Reverting to the definition of a legal charity, it will be easily seen that it is impossible to specify the innumerable objects or purposes for which a charitable trust may be created. The difficulty is inherent in the subject matter itself. A charitable trust or a charity is a donation in trust for promoting the welfare of mankind at large, of a community, or of some class forming a part of it, indefinite as to

numbers and individuals. It may, but it need not, confer a gratuitous benefit upon the poor, or look to the care of the sick or the insane, or seek to spread religion or piety. Schools and libraries, equally with asylums, hospitals, and religious institutions, are included within its scope. Therefore, the enforcement of charitable uses cannot be limited to any narrow and stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men. New discoveries in science, new fields and opportunities for human action, and the differing conditions, character, and wants of communities and nations change and enlarge the scope of charity; and where new necessities are created, new charitable uses must be established. The underlying principle is the same; its application is as varying as the wants of humanity.

"Charity in its legal sense comprises 4 principal divisions: (1) Trusts for the relief of poverty; (2) trusts for the advancement of education; (3) trusts for the advancement of religion; and (4) trusts for other purposes beneficial to the community, not falling under any of the preceding heads. The trusts last referred to are not the less charitable in the eye of the law, because incidentally they benefit the rich as well as the poor, as indeed every charity that deserves the name must do, either directly or indirectly. The American Law Institute recognizes 6 divisions, separating the fourth class into 3 distinct groups, and states that charitable purposes include: (1) The relief of poverty; (2) the advancement of education; (3) the advancement of religion; (4) the promotion of health; (5) governmental or municipal purposes; and (6) other purposes the accomplishment of which is beneficial to the community. It also points out that a charitable trust can be created for 2 or more purposes stated in this classification. Thus, a trust to establish a scholarship for poor boys is a trust for the relief of poverty and for the advancement of education. So, a trust

to provide medical assistance for the poor is a trust for the relief of poverty and for the promotion of health."

Of like import is 14 CJS, Charities, § 12, p 439 *et seq.*

Consistent with the general principles recognized in the language above quoted from American Jurisprudence is the decision of the circuit court of appeals of the sixth circuit in *Chicago Bank of Commerce* v. *McPherson,* 62 F2d 393. In that case an attack was made on the validity of certain charitable trusts created by the will of Charles F. Ruggles of Manistee, Michigan. Among other provisions, said will undertook to create a trust estate from which the income should be devoted to "charitable, benevolent, educational and public welfare uses in the State of Michigan." The intent was further expressed that the needs and requirements of residents of Manistee county, and of the "charitable, benevolent, educational and public welfare institutions serving the inhabitants of the said county" should be given preference over like needs and requirements of other persons and institutions as beneficiaries under the trust. Validity of the provisions in question was assailed on the ground that the objects and beneficiaries were indefinite, and that the purposes mentioned by the testator were not necessarily charitable. In sustaining the trust, it was said, in part, by Judge Simons who wrote the opinion of the court (pp 397, 398):

"It seems clear that Ruggles originally intended a charitable trust in its broadest sense, and that the addition of public welfare uses to its objects indicated no change in purpose. As was said by the court of appeals of the eighth circuit in passing upon a sequence of descriptive words of similar import to those, in the disposition here involved: 'The word "charitable" is the dominant word, coloring and

conditioning those which follow, and that an over-riding charitable intent is disclosed.' *Gossett* v. *Swinney,* 53 F2d 772, 778, an application of the maxim *noscitur a sociis.* It seems to us not insignificant that the testator here declared: 'It is my desire and intent that the reasonable *needs* and *requirements* of the inhabitants of Manistee county, and of the charitable, benevolent, educational and public welfare *institutions,* shall at all times be given preference over the like needs and requirements of other persons and institutions.' This, in the environment in which it is used, is language clearly indicative of a charitable purpose, and one public rather than private in its scope.  *  *  *

"In considering other grounds for attack upon the validity of the trust, we need add little to the comment of the district judge. The State of Michigan, after following a settled policy for nearly a century in denying validity to charitable trusts, completely reversed that policy, and upon each occasion broadened the scope of its legislation, until it is now the settled policy of the State expressly declared in its law to interpret them liberally. Zollman, American Law of Charities, § 61. Charitable trusts are of necessity indefinite and uncertain in respect to beneficiaries, and the modern view is that certainty of objects and too great a limitation upon the discretionary powers of trustees more often tends to defeat the dominant charitable purpose of the testator than to effectuate it. Objects of private beneficence in one generation may no longer require a testator's bounty in the next, and classes of beneficiaries in normal times tend to disappear. Michigan has adopted an enlightened, forward looking view. It ought not lightly to be ignored in the face of the express declaration of its legislature and the decisions of its courts."

In *Commissioner of Internal Revenue* v. *Upjohn's Estate,* 124 F2d 73, the circuit court of appeals of the sixth circuit, in construing as exempt from taxa-

tion under the Federal income tax law a testamentary bequest to trustees "for such civic, charitable, educational or religious purposes, and for such purposes of general and public welfare as in their discretion may seem desirable, or as in their opinion would be approved by me if I were then present," said (p 77):

"It is axiomatic, as a principle of construction, that words in a statute, or a written instrument, are not to be measured separately but each term is to be construed in its association with other terms and in its general environment."

A like conclusion was reached by the circuit court of appeals of the seventh circuit in *Arthur Jordan Foundation* v. *Commissioner of Internal Revenue,* 210 F2d 885. The plaintiff Foundation was created as a perpetual trust by an agreement between the donor and named trustees. The purposes of the trust and the duties of the trustees were indicated in the following language (p 886):

"To apply the entire earnings and profits thereof solely to charitable, educational, religious, literary, scientific purposes and social advancement, including music and the arts, in order to promote the well-being of mankind throughout the world, and particularly in the United States."

In reaching the conclusion indicated, it was said (p 888):

"The commissioner suggests, first, that here the beneficial purposes for which the trust income was directed to be applied are not confined to those which are sanctioned by the code. Specifically, it is said that the applications of funds to 'social advancement, including music and the arts,' is not a use for which the statute allows deduction. We think this argument is wholly without merit. As the court stated in *Commissioner of Internal Revenue* v. *Upjohn's Estate* (6 Cir), 124 F2d 73, 77, 'We do not

understand that to come within the statute its exact words must define the limits of a charitable trust.' In that case a direction that the trust funds were to be used, in part, for 'civic' and 'general and public welfare' purposes was held to be proper under the statute."

In the case at bar the testator, in creating the trust, specified at the outset that the income should be used "for charitable and educational purposes as herein specified." Such statement indicates his intent with reference to the nature of the memorial fund that he created. Consistent therewith is his statement indicating his feelings toward the people of Saginaw, and his desire to permanently benefit them. The term "social welfare" as applied to organizations and purposes in subdivision (b) is associated in each instance with the word "charitable." It will be noted that said institutions are first referred to in the conjunctive, suggesting that the testator had in mind institutions organized for charitable purposes having a social welfare aspect, or, in other words, public charity. While the word "or" is subsequently used, it seems apparent that the testator did not intend a different meaning. The context does not indicate that the form of expression is of controlling significance. The reference to "charitable and social welfare purposes" further suggests that in the mind of the testator such purposes were identical, alike referring to activities designed to benefit the people of Saginaw county generally through the extension of aid and assistance constituting charity in the legal sense of the term. The intent of the testator as specifically declared at the outset may not be permitted to be defeated by technical construction of a subsequent term, especially when such construction is not indicated. In accordance with rules of interpretation applicable to instruments creating trusts for the purposes specified in the statute, above

quoted, we conclude that the tenth paragraph of the will creates a trust for charitable and educational purposes, and that under the provisions of the statute it is valid.

This brings us to a consideration of the second question raised in the case. The defendant Second National Bank & Trust Company, then sole executor under the will, on May 2, 1934, filed its final account, and petitioned for assignment of the residue in accordance with the terms of the will. On the 10th of May, 1935, an order was entered approving the account and further providing that:

"It is further ordered that administration on said estate be and the same is hereby closed and the residue assigned according to the terms of the will to the testamentary trustee."

No appeal from said order was taken, and it is the claim of the defendants in the present suit that it was *res judicata*. It is contended in substance that such order was requisite to proper probate procedure in the case, that directing the turning over of the subject matter of the trust to the trustee in accordance with the will necessarily involved a construction of said will, and that, in consequence, the trustee was entitled to proceed in the performance of its duties. On behalf of appellant it is argued in substance that the probate court was wholly without jurisdiction to make a valid order in the premises and that, in consequence, the action taken is subject to collateral attack. It is further suggested that inasmuch as plaintiff was not an heir of testator she was not in position to challenge said order at the time it was entered. It does not appear that her mother, under whom she claims, was for any reason barred from taking an appeal. In view of the nature of the rights that appellant is asserting, the failure of her mother to act is binding on her.

The question presented has been heretofore passed on by this Court in *Chapin* v. *Chapin,* 229 Mich 515. The will there involved, which created a trust, was probated in Cook county, Illinois, with ancillary proceedings in Berrien county, Michigan. The widow and 2 of the sons of the testator were appointed as executors and duly qualified as such. Probate proceedings were had in conformity with the statute and the final account of the executors was submitted and allowed. A petition was then filed reciting the proceedings taken and asking that the court issue letters of trusteeship authorizing and empowering the trustees designated to manage and control the property of the estate in Michigan in accordance with the will. Such an order was entered on January 15, 1917. Several years later a bill was filed in the circuit court of Berrien county asking a construction of the will. As in the case at bar, defendants made the claim that the order of the probate court, from which no appeal had been taken, was *res judicata.* In sustaining such claim, it was said (p 525) :

"The executors after their appointment and qualification could not be lawfully discharged until they had turned over the property in their hands as shown by their final account to the persons lawfully entitled to it. The duty does not rest upon them to determine such persons. It rests upon the court. To do so the judge of probate must construe the will, that is, determine from its terms to whom the executors should make delivery. Having done so by his order committing the management, control and disposal of the trust property to the trustees, we are of the opinion that their right thereto is not subject to collateral attack. *Dudley* v. *Gates,* 124 Mich 440; *Riebow* v. *Ensch,* 220 Mich 450; and *Calhoun* v. *Cracknell,* 202 Mich 430, may be read with profit. See, also, the authorities cited and quoted from in *Thompson* v. *Thompson,* 229 Mich 526, handed down herewith."

In *Thompson* v. *Thompson,* 229 Mich 526, the will in question was admitted to probate following the death of testatrix.  Thereafter plaintiff filed his final account as executor and asked that the probate court make an order determining the legal heirs of the deceased and assigning the residue of the estate to the persons entitled thereto.  The order for hearing was published as required by statute.  Thereafter, on the date specified in the notice, the probate court entered its order assigning the residue of the estate to plaintiff in accordance with the last will and testament of deceased.  It was held that such order was not subject to attack in a collateral proceeding, the Court citing *Chapin* v. *Chapin, supra*.  Plaintiff brought suit to quiet title against defendant, a son of the testatrix, who claimed that he was not bound by the order of the court because he was at the time a minor.  In rejecting the claim this Court pointed out that the administration of estates is not in the nature of a suit between parties but, rather, a proceeding *in rem,* and that when the court has once acquired jurisdiction it is empowered to make all orders necessary to the proper administration of the estate.  The *Chapin Case, supra,* was followed in *In re Jones' Estate,* 334 Mich 392, 399.  See, also, *Second National Bank & Trust Co.* v. *Wayne Circuit Judge,* 321 Mich 28.

Counsel for appellant cities *MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich 563, in support of his claim that the order of the probate court of Saginaw county entered in May, 1935, is not *res judicata* as to plaintiff.  The claim was there made that the allowance of 3 annual accounts filed by an executor in probate court, after proper statutory notice, involved construction of the will creating a trust and amounted to an adjudication as to the propriety of the method of treatment of beneficiaries under the will.  Such claim was rejected, this Court holding

that an annual account of an executor or administrator is final as to the amount of money received and disbursements made, in the absence of fraud or breach of trust, but that it does not involve the construction of the will under which the executor acts. In the case at bar we are not dealing with an annual report by the surviving executor, but, rather, with the final report and an order assigning the residue in accordance with the terms of the will. With reference to such a situation, the Court in the case last cited said (p 580):

"If, however, upon the conclusion of the probate of the estate of a testator, upon the allowance of the administrator's final account, the assignment of the residue of the property of the estate is made in accordance with the construction of the will of the deceased by the probate court, then, under such circumstances, the court having to construe the will in order to make a proper order of distribution, such order of distribution properly entered is valid and binding as a construction of the will, if not appealed from. *Dudley* v. *Gates,* 124 Mich 440."

It is somewhat significant that *Dudley* v. *Gates,* cited in the language above quoted, was also cited and relied on in *Chapin* v. *Chapin, supra.* The reasons underlying the foregoing decisions are equally applicable in the case at bar. We are in accord with the finding of the trial judge that the order of the probate court of Saginaw county of May 10, 1935, not having been appealed, is *res judicata* and constitutes a bar to plaintiff's present action.

The decree of the circuit court is affirmed, with costs to defendants.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.