## *In re* CHARLTON ESTATE.

### SMACY *v.* BARRY COUNTY.

1. WILLS—CONSTRUCTION—INTENT.
   The cardinal rule of construction of a will is to give effect to the intention of the testator if the intention was expressed.

2. SAME—CONSTRUCTION—PRESUMPTION AGAINST INTESTACY.
   There is a strong presumption against intestacy when a will is being construed.

3. SAME—AVOIDANCE OF INTESTACY.
   No part of a testator's estate should be treated as intestate if intestacy can reasonably be avoided.

4. SAME—POWER OF SALE.
   Provision in will giving power of sale of interests in real estate *held,* not to provide for equitable conversion of real estate into money which vests in the heirs at law when the power of sale was given for the benefit of the beneficiary and the convenience of the executor "in order to avoid confusion and make distribution to my beneficiary more easily accomplished."

5. SAME—CONSTRUCTION—PERPETUATION OF MUSEUM.
   Central purpose of testator to protect and perpetuate museum he had founded, so that the people of the beneficiary county might have the benefit, stood out as his intention to be effectuated in construing his will.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5]  57 Am Jur, Wills § 1133.
[2, 3]  57 Am Jur, Wills §§ 1157, 1158.
[4]  41 Am Jur, Powers §§ 8, 10, 27.
[6]  57 Am Jur, Wills § 1137.
[7]  57 Am Jur, Wills §§ 1129, 1136, 1146, 1415–1417.

6. SAME — CONSTRUCTION — INTENT — PARTICULAR PARTS — CONSIDER WILL AS A WHOLE.

Courts must consider the will as a whole, including its general scope, logical implications, and necessary inferences, when construing the will or interpreting particular words, parts, or provisions and in determining testator's intent in relation to them.

7. SAME—CONSTRUCTION—PROCEEDS OF ESTATE—MUSEUM.

Provision in will that "it is my will that the proceeds of my estate be used for a stone building addition to the present museum" is construed to be a residuary clause giving to beneficiary county, owner of museum, that part of the estate not specifically disposed of in prior clauses, and not as a clause disposing of property already disposed of in the will thus leaving a residue to pass through intestacy to the heirs at law.

Appeal from Barry; McIntyre (Robert W.), J., presiding. Submitted Division 3 November 8, 1967, at Grand Rapids. (Docket No. 3,428.) Decided March 20, 1967. Leave to appeal denied May 22, 1968. See 381 Mich 752.

James H. Conner, executor of the will of Irving D. Charlton, deceased, petitioned for construction of a will and distribution of the residue. Will construed to give residue of estate to Barry county. Zeda Smacy, heir at law, appeals. Affirmed.

*H. Donald Bruce,* for appellant.

*Laurence E. Barnett,* for executor.

*Richard M. Bauer,* Prosecuting Attorney, for Barry county.

*Paul E. Siegel,* for Board of Road Commissioners of Barry county.

HOLBROOK, J. This action involves the construction of the last will of Irving D. Charlton, dated July 12, 1961, and admitted to probate September 30, 1964. The Honorable John W. Conlin, acting judge of probate for Barry county, after a hearing, ruled that all of the residue in the estate was properly willed to Barry county, and an appropriate order was entered to this effect July 28, 1965. Zeda Smacy, one of 12 cousins, an heir at law, appealed to the circuit court for Barry county. The matter was submitted on the record together with briefs followed by oral argument. The Honorable Robert W. McIntyre, circuit judge, affirmed the order of Judge Conlin and remanded the matter to the probate court for further administration as provided by law. Zeda Smacy has appealed to this Court and raises one question for review which we state as follows: *Can the will of Irving D. Charlton be properly construed so as to leave his entire estate to Barry county?*

The background of this case as submitted to the trial court was as follows: Irving D. Charlton died on June 12, 1963, at the age of 80 years. He was a resident of Barry county. He had received a college education in civil engineering about 60 years ago and had practiced his profession with success and accomplishment until he retired about 1936. He had been a college professor and in later years was a consultant on engineering matters throughout the United States and Canada. After retirement, he returned to his former home and developed a museum of historical items and articles used by the early pioneers, including such items as steam engines and farm equipment used by the early settlers. He deeded a farm to Barry county and collected these items on this land. It was located on the Thornapple river and had historical significance as a gathering place for the Indian

population before the white man came. He initiated gatherings of the Indians and also put on steam engine rodeos. It is claimed that the area as a public park and place of entertainment had as many as 50,000 visitors a year.

He married in middle life, his marriage ended in divorce, and thereafter he had a very antisocial attitude toward women. He operated the Charlton Museum on an arrangement with Barry county that provided for his being the manager, maintenance being a matter of agreement between himself and the county.

The pertinent provisions of Irving D. Charlton's will are as follows:

"Second, I give and bequeath to the county of Barry, for the use, benefit, instruction and enjoyment of its citizens and of the public at large, my entire collection of museum pieces, articles and items, without reservation or exception, which I have secured over many years and which are now contained in the Barry County Memorial Museum, or elsewhere, and whether the same are labelled, catalogued or otherwise identified. * * * Their value will be clearly established by competent appraisers and will exceed $500,000.00. The items I have purchased and hereby bequeath to the county of Barry constitute a large portion of this value. I mention these facts to emphasize the necessity for an adequate enlargement of the museum to secure the safekeeping of the more valuable items and to point out the wisdom of obtaining sufficient insurance.

"Third, at the date hereof, I am the owner of Pleasant Shores Plat in Castleton township, of Irving Charlton Plat in Hastings township, of ten acres on Center road not far from Charlton Park, and mineral rights to a tract of land near Laramie, Wyoming. Approximately $44,000 is now outstanding and payable under the terms of several land contracts for the purchase of lots and about 145 lots

remain unsold. I give, devise and bequeath unto
the county of Barry (subject to the power of sale
and directives addressed to my executor, contained
in the following paragraph) all of my right, title
and interest in and to the real estate above men-
tioned and of which I die seized, both sold on de-
ferred payments and unsold, hereby assigning and
transferring all of my rights or interests therein to
said beneficiary, subject, of course, to the terms and
provisions of any uncompleted land contract.

"Fourth, I hereby create a power of sale, authoriz-
ing, empowering and directing my executor to forth-
with, and as rapidly as possible, to sell and dispose
of all my unsold real estate at the best market value
obtainable and to compromise, reasonably discount
or urge and accomplish the settlement in cash of as
many of the outstanding land contracts, as possible,
with full authority to execute and deliver good and
sufficient executor's deeds in completion of said con-
tracts, said power of sale as to unsold real estate to
extend to the making of further contracts for de-
ferred payments if he so decides and to execute all
papers and instruments necessary or incident to the
sale and disposal of my real estate, or equity therein,
without reference or permission of the probate court.
I request a delay in the usual closing period of my
estate if it will appear to materially assist my execu-
tor in reducing my real estate interests to cash in
order to avoid confusion and make distribution to
my beneficiary more easily accomplished.

"Fifth, I strongly urge my executor to consult with
Austin Schantz and my other good friends and inter-
ested members of the board of supervisors and es-
pecially with the members of the Barry county road
commission. I appoint Laurence E. Barnett, my
long-time friend and legal advisor, as attorney for
my estate if he is still available, knowing that he is
aware of my wishes and plans.

"Sixth, it is my will and sincere hope that the pro-
ceeds of my estate be used for a stonebuilding addi-
tion (or one of equally substantial construction) to

the present museum building, similar in design and with a floor area not less than 10,000 square feet, with its rear northwesterly corner adjacent to the rear southeasterly corner of the present building, and extending in an easterly direction, parallel to the line of the present roadway. It should be connected to the present building by a tunnel so that it might be kept closed and secure except for emergency exits."

Appellant asserts that clause 2 of the will gave the museum pieces to the county of Barry without reservation. However, she claims that the devise of interests in real estate mentioned in clause 3 of the will was subject to a power of sale which provided for equitable conversion of the real estate into money which vested in the heirs at law (CL 1948, § 702.1 [Stat Ann 1962 Rev § 27.3178(71)]; CL 1948, § 702.4 [Stat Ann 1962 Rev § 27.3178(74)]) together with other assets not specifically mentioned in the will, subject only to providing funds for the museum addition described in clause 6 of testator's will.

The cardinal rule of construction of a will is to give effect to the intention of the testator if the intention was expressed. *Love* v. *Sullivan* (1966), 5 Mich App 201; *In re McKay Estate* (1959), 357 Mich 447; *Cleveland* v. *Second National Bank & Trust Company* (1958), 354 Mich 202; *Detroit Wabeek Bank & Trust Company* v. *City of Adrian* (1957), 349 Mich 136; *In re Lawton Estate* (1956), 347 Mich 143; *In re Darmstaetter's Estate* (1940), 293 Mich 596. The courts also recognize a strong presumption against intestacy when a will is being construed. *In re McKay Estate, supra; In re Chapple's Estate* (1953), 338 Mich 246; *Foster* v. *Stevens* (1906), 146 Mich 131; *Mann* v. *Hyde* (1888), 71 Mich 278. Under Michigan law, no part of a testator's estate should be treated as intestate if intestacy can reasonably be avoided. *Detroit Trust Co.* v. *Stoepel* (1945), 312

Mich 172. The third clause gave, devised and bequeathed land sold on contract and the land unsold to Barry county (subject only to power of sale in clause 4 for benefit of Barry county and convenience of executor). This clause is sufficiently adequate to cover a vendor's interest as well as equitable interests in land.

"Since, under a valid contract to purchase land, the vendee is, in equity, the real owner, and the purchase money is treated as a mere encumbrance on the land, as appears in Vendor and Purchaser § 106, this equitable interest which the purchaser has may be devised. So, also, the vendor in a contract of sale, or an option to sell, may devise his interest, and the devisee will take the land subject to the same obligation as the testator, the right of the owner of the equitable title to the land not being affected by the vendor's will. * * *

"The unpaid portion of the purchase price for land deeded to another may be disposed of by the grantor by will." 94 CJS, Wills, § 81, p 788. (Footnotes omitted.)

The fourth clause gave a power of sale to the executor to dispose of the real estate or equity therein of the testator *"in order to avoid confusion and make distribution to my beneficiary more easily accomplished."* (Emphasis supplied.) We do not read this provision in the will as providing for an equitable conversion of the real estate, defeating the devise contained in clause 3. Because of the need to effect the intent of the testator, we read it as consonant with clause 3 and inserted for the benefit of the beneficiary, Barry county.

We now come to the controversial clause 6 of the will. The pertinent words of this clause as we view them are as follows:

*"It is my will * * * that the proceeds of my estate be used* [by Barry county] *for a stonebuilding addi-*

*tion (or one of equally substantial construction) to
the present museum building   \*   \*   \*   with a floor
area not less than 10,000 square feet* [importance of
which is emphasized in clause 2]." (Emphasis and
references supplied.)

Unless this clause disposes of property not other-
wise specifically named in the will, such property
would pass intestate to the heirs at law.

The instant will was obviously in the words and
language of the testator, although "drafted" by his
attorney. The case of *In re McKay Estate* (1959),
357 Mich 447, construed the precatory words of the
testator, "I request." A part of the will read as fol-
lows: (p 449)

"I request   \*   \*   \*   that the (Little Sisters of the
Poor Share in my estate With (St. Christper Inn of
Graymor N. York.) And (Maryan hill Fathers of
Ann Abor trail a mission to be used to edcate Nav-
ities priest."

These words in the will were termed mandatory
in considering the will as a whole. Mr. Justice ED-
WARDS stated in part on p 452 of the opinion as fol-
lows:

"As to the last of the questions posed, again taking
the will as a whole, we have little difficulty holding
that the intention of the testatrix was to leave the
residue of her estate to the 3 charities, share and
share alike. We find the residuary feature in the
general nature of the clause 'share in my estate,'
when compared to the specific quality of all the
other devises."

In determining the testator's intentions from the
4 corners of the instrument, we are convinced of his
one central purpose, *i. e.,* to protect and perpetuate
the museum that he founded including the many arti-
facts he had acquired down through years of ded-

icated search. This he desired to do above every-
thing else so that the people of Barry county might
have the benefit. The avenue he selected for the ac-
complishment of this purpose was Barry county and
its officers who had worked with him to advance his
cherished goal. That his museum was a success is
not questioned. Thousands of citizens each year
visited the museum and appreciated seeing the his-
tory of the past by viewing the many items used by
the early settlers in our State. This service to man-
kind was not profit motivated for a good share of his
earthly belongings were utilized to make the museum
possible, including the gift of the farm on which the
museum is located to Barry county. Mr. Charlton
was a frugal man in all other characteristics of his
daily life. The trial judge in his opinion stated in
part as follows:

"Irving D. Charlton died testate June 12, 1963,
being 80 years of age at the time. He had lived in
Barry county, Michigan most of his life. He was a
college graduate, skilled in the art of civil engineer-
ing, but devoted very little of his life to the actual
practice of this art. Although married for a brief
period of time and during World War I, following a
divorce he never sought a family life thereafter
but became rather a recluse pursuing as his hobby
the collection of artifacts concerning the Indian life
in Barry county, and the history of the development
and enlargement of the pursuits of the county. He
lived a severely economic life, dressed in tattered
clothing, drove an ancient car, and devoted very little
of his extensive wealth to his own personal pleasures
pursuits. * * *

"Although this paragraph 6 may not technically
fit the requirements of a residuary clause, it is as
close as a layman dictating a will could possibly
come to it.

"It is the judgment of this court that when Mr.
Charlton used the words, 'the proceeds of my estate,'

he meant the rest, residue and remainder of my estate. Admittedly, paragraph 6 does not name his beneficiary; however, the earlier wording of the will indicates that the addition to the museum would be for the uses and purposes of the people of the county of Barry. Further, the use of the word 'beneficiary' in its singular sense throughout the instrument betrays no other intent and no other construction is conceivably possible looking at the instrument from all four corners."

In 95 CJS, Wills, § 620, pp 850–859, it is said in part:

"In construing a will or interpreting the meaning of particular words, parts, or provisions of a will, and in determining the intention of the testator in relation thereto, the courts must consider the will as a whole, including its general scope, logical implications, and necessary inferences."*

In construing the will of Mr. Charlton as a whole to effect his intentions, we come to the conclusion that he had a general plan, i.e., the preservation of the artifacts that made up his museum; enlarging the museum and perpetuating the same for the benefit of the citizens of Barry county. The only beneficiary named in the will was Barry county and there can be no doubt that the general testamentary plan can only be effectuated provided clause 6 is construed as a residuary clause giving to Barry county that part of his estate not specifically disposed of in the first 5 clauses, for the express purpose of en-

* "(1) If general testamentary plan appears from reading of will as a whole, such plan ordinarily offers a valuable aid in construction of language used. *Bankers Trust Co.* v. *Pearson* (1953), 140 Conn 332 (99 A2d 224).

"(2) A will is to be examined with a view toward discovering decedent's testamentary scheme or general intention, and meaning of particular words, phrases, and provisions shall be subordinated to such scheme, plan, or dominant purpose. *In re Eggleston's Estate* (1954), 129 Cal App 2d 601 (277 P2d 469); *In re Raymond's Estate* (1950), 96 Cal App 2d 808 (216 P2d 515).

larging the museum as directed. *In re Jones Estate* (1959), 358 Mich 85; *In re McKay Estate, supra; Union Trust Co.* v. *Fisher* (1927) 240 Mich 68.

We conclude the construction of the will as determined by the probate court and the circuit court was proper.

Affirmed. Costs to appellees.

LESINSKI, C. J., and BURNS, J., concurred.